**CULLEN AND DYKMAN LLP**
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Fl.
Uniondale, New York 11553
(516) 357-3700
Email: rpreite@cullenllp.com

Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Fl.
New York, New York 10004
(212) 510-2296
Email: mmcmahon@cullenllp.com
        kchristodoulou@cullenllp.com

*Proposed Attorneys to Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SYSOREX GOVERNMENT SERVICES, INC. | Case No. 25-_____ (____) |
| Debtor. | |

**DECLARATION OF ZAMAN KHAN**
**PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2**

I, A. Zaman Khan, hereby declare, pursuant to the penalties of perjury under 28 U.S.C.

§1746, that the following statements are true and correct:

1.      I am the President of Sysorex Government Services, Inc. (the "**Debtor**" or

"**SGS**"), the debtor and debtor-in-possession herein. In this capacity, I am familiar with the day-

to-day operations and financial affairs of the Debtor.

2.      I submit this Declaration (the "**Declaration**") pursuant to Rule 1007-2 of the

Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**") in support of

the Debtor's petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C.

§101, et seq. (the "**Bankruptcy Code**") filed on the date hereof (the "**Petition Date**"). Except as otherwise indicated, all facts set forth in this Declaration are based upon personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and information concerning the Debtor's operations. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtor.

3.      I am advised that Local Rule 1007-2 requires certain information related to the Debtor which is set forth below and in the schedules annexed hereto. This Declaration is also provided in support of the First Day Motions (defined below). Unless otherwise indicated, the financial information contained herein is unaudited.

## The Debtor

4.      The Debtor provides information technology solutions primarily to federal, state and local governments. These solutions include cybersecurity, professional services, engineering support, IT consulting, enterprise level technology, networking, wireless, help desk and custom IT solutions. Since its founding, SGS has served its customers by offering products and services from key industry vendors such as Aruba, Cisco, Dell, GETAC, Microsoft, Panasonic, Samsung, TidalWave, ShawnTech, Tek84 and others. The Debtor provides its customers with comprehensive solutions incorporating leading products and services across a variety of technology practices and platforms such as cyber, cloud, networking, security, and mobility. SGS utilizes its professional services, consulting services and partners to develop and implement these solutions. SGS's sales and marketing efforts in collaboration with its vendor partners allow it to reach multiple public sector customer segments in federal, state and local governments, as well as educational institutions.

2

5.      Sales to federal, state and local governments accounted for approximately 100% of SGS's net sales. SGS's past customers have included, among others, federal and international government agencies and state and local governments. Although SGS has had many customers, two customers generated approximately 85% of SGS's gross revenue over the past three years approximately. SGS plans to continue to focus its efforts on existing and potential government customers.

6.      SGS experiences variability in its net sales and operating results on a quarterly basis and some seasonal trends in its sales of technology solutions to government and educational institutions. For example, the fiscal year-ends of U.S. Public Sector customers vary for those in the federal government space and those in the state and local government and educational institution ("**SLED**") space. SGS generally sees an increase in its second quarter sales related to customers in the U.S. SLED sector and in its third quarter sales related to customers in the federal government space as these customers close out their budgets for their fiscal year (June 30th and September 30th, respectively). SGS may also experience variability in its gross profit and gross profit margin as a result of changes in the various vendor programs SGS participates in and its effect on the amount of vendor consideration it receives from a particular vendor or their authorized distributor/wholesaler, may be impacted by a number of events outside of its control.

7.      SGS's office, where its records are kept, is located at 13880 Dulles Corner Lane, STE 120, Herndon, Va. 20171. SGS's website addresses are www.sysorexinc.com. As of the Petition Date, the Debtor employed 9 full time individuals.

8.      The Debtor has two bank accounts maintained at Burke and Herbert Bank and a PNC Bank. The Debtor intends to have both accounts closed immediately following

commencement of this chapter 11 case and open a new debtor-in-possession account at PNC

Bank. PNC Bank is an authorized depository on the approved list of the Office of the U.S.

Trustee for Region 2.

9.      Local Rule 1007-2(a)(1): The nature of the Debtor's business and the

circumstances leading to the Debtor's filing this Chapter 11 case are as follows.

### The Debtor's Business

10.      The US government continues to increase its spending on technology,

cybersecurity, and artificial intelligence. The US government's civilian agency IT budget for

2024 was around $74 billion, and the 2025 budget is proposed to be $75 billion, *but it has been*

*reported that the newly formed Department of Government Efficiency ("DOGE") is working*

*to curtail US government spending going forward. In fact, SGS has been recently advised by*

*the USDA that one of its recent orders has been put on a 90-day hold, and SGS is further*

*informed that the hold was implemented by DOGE, but SGS hasn't received written*

*confirmation of such.* The US Department of Defense IT budget is around $35.5 billion.[1] The

estimated 2025 Defense budget for Technology and Cybersecurity is:

- •      $17.2 billion in science and technology;

- •      $1.8 billion in artificial intelligence;

- •      $1.4 billion in Combined Joint All Domain Command and Control to deliver information advantage at the speed of relevance across all domains and partners;

- •      $450 million for the Rapid Defense Experimentation Reserve to help more swiftly field new capabilities;

- •      $144 million to support the Office of Strategic Capital, including $132.6 million in RDT&E funding, which Secretary Austin established to enable the Department to attract and scale private capital in its most critical component-level supply chain technologies; and

---

[1]  Source: White House.  **https://www.whitehouse.gov/wp-content/uploads/2024/03/ap_15_it_fy2025.pdf**  *(This link is no longer available online as it has been taken down by the current administration.)*

• $14.5 billion for cyberspace activities focused on three main portfolios covering cybersecurity, cyberspace operations, and cyber research and development.[2]

11. SGS holds three major Government Wide Acquisition Contracts ("**GWAC**"). A GWAC is a contract that allows all branches of the federal government, government authorized contractors, and state/local to acquire goods or services. GWACs eliminate the large cost associated with individual agencies issuing Request for Proposals ("**RFP**"), contract award, and contract management. GWACs are widely used by all government agencies as a cost-effective way to procure goods and services. The GWACs that SGS holds are: (i) NASA SEWP V, (ii) NIH CIO-CS, and (iii) SA IT Schedule 70. Through these contracts the Debtor has the ability to generate significant revenue annually if its vendor and supplier issues can be resolved.

12. SGS also has the ability to pursue opportunities that require clearance to submit an offer because SGS holds a facility clearance and the vast majority of SGS workforce are cleared at the Secret and Top-Secret level. Additionally, SGS is a small business, which allows it to pursue opportunities reserved as small business set-asides.

**Events Leading to Bankruptcy**

13. The Debtor experienced funding difficulties that have disrupted its ability to fulfill existing orders and to take advantage of new opportunities. The Debtor explored a number of strategic alternatives and determined that a sale of its business was the best approach. The Debtor has been marketing its business for approximately 37 months and commenced this bankruptcy to facilitate a sale of its business. The Debtor intends to use the proceeds of such sale to fund a plan of reorganization and distribution to creditors under the plan.

14. SGS currently has multiple orders on hold due to inability to fund orders,

---

[2] Source: Department of Defense. (***Department of Defense Releases the President's Fiscal Year 2025 Defense Budget > U.S. Department of Defense > Release***)
***(https://www.defense.gov/News/Releases/Release/Article/3703410/department-of-defense-releases-the-presidents-fiscal-year-2025-defense-budget/)***

5

including:

- The Federal Bureau of Prisons ("**BOP**") has several programs under contract with SGS. The Video Relays Service ("**VRS**") requires a rack server setup and customized kiosk at all BOP facilities housing 50 or more inmates. Each system costs SGS approximately $28,000 and requires components from multiple OEMs and suppliers. These systems are very profitable since they also include annual maintenance contracts, and a follow-on contract named VRS Enhanced.

- US Department of Agriculture ("**USDA**") equipment sold typically have margins of 18%. SGS has over $15 million in existing commitment from its various contracts and SGS will not be able to fulfill these orders without some line of credit in order to prepay its suppliers.

15.    Currently SGS only has three distributors for supply of IT goods. These are TD/Synnex (for Microsoft, Samsung), Carahsoft (for Dell), and ScanSource (for Panasonic). There are several other suppliers that the Debtor can source goods from, however due to its financial challenges SGS is limited to these three distributors. This causes the margins to stay lower than expected since SGS cannot have distributors of like products compete for its orders. Currently, the majority of SGS's purchase orders to the suppliers are on prepaid basis. The Debtor funds these purchase orders by utilizing financing from SouthStar Capital, LLC ("**SouthStar**").

16.    The Debtor's lack of funding also leaves it unable to pursue new contracts because it cannot acquire or maintain the required resources, such as human capital, access to business intelligence platforms, required goods and services, and to travel to customer sites and industry day events. For example, SGS is not able to pursue high margin professional services contracts. Professional services hourly rates require vetting by the government before such services and rates can be offered to the government. High margin revenue comes from service offerings. SGS cannot hold a bench of professionals due to the associated costs, therefore SGS does not pursue services contracts at this time. This is only one example of the numerous strategic opportunities that SGS could pursue given the right resources and financial conditions.

6

### The Debtor's Creditors

*Debentures*

17.      SGS is a subsidiary of Sysorex, Inc. ("**Sysorex**") and has guaranteed Sysorex's obligations under the Security Agreement dated July 7, 2021 whereby Sysorex issued 12.5% Original Issue Discount Senior Secured Convertible Debentures (the "**Debentures**"). SGS, along with other subsidiaries of Sysorex Inc., has jointly and severally guaranteed payment of the Debentures (the "**Guarantee**"). SGS has pledged a security interest in substantially all of its assets to secure the prompt payment, performance, and discharge in full of all obligations under the Debentures and the Guarantee. Cavalry Fund I LP acts as the collateral agent for the Debenture holders. As of March 31, 2025, approximately $25,666,455 is owed to the Debenture holders and secured by substantially all of the assets of the Debtor.

*SouthStar*

18.      SGS is also party to a Sale and Assignment of Accounts with SouthStar pursuant to which SouthStar provides the Debtor financing by paying the Debtor up to 85% of the face amount of account receivables accepted by SouthStar, subject to certain charges, including (i) 0.80% of the face amount for the first ten days after payment, (ii) 0.90% for each additional ten-day period; (iii) an additional 1.00% per ten-day period for invoices exceeding 60 days, and (iv) transactional administrative fees and other charges as specified in the agreement. As of the Petition Date the Debtor owed SouthStar **approximately $1.5 million**. The Debtor's obligations under the SouthStar Agreement are secured by a first priority security interest in substantially all of the assets of the Debtor.

*Significant Trade Vendor Claims*

19.      The Debtor's financing difficulties have also caused SGS to fall behind in the

payment of its trade debt. SGS would need to complete payment to these vendors before it can take on further orders:

- Canon USA[3] $782,162.00

- Tek84 $635,010.00

- TidalWave $306,160.00

- Trace-tek $69,800.00

Canon USA is no longer an active vendor of the Debtor. ***On September 27, 2024, Canon USA was granted a judgment in the amount of $782,162.27 plus post-judgment interest pursuant to 28 U.S.C. § 1961 for unpaid invoices from 2022 against SGS in the action entitled Canon U.S.A. Inc. v. Sysorex Government Services Inc. in the United States District Court, Eastern District of New York in case bearing index no. 23-cv-8001 (DLI)(LGD). Canon now seeks to enforce that judgment against parent Sysorex as well as officers Zaman Khan and Wayne Wasserberg in the United States District Court, Eastern District of New York in case bearing index no. 2:24-cv-08042.***

*The Debtor's Leased Office Space*

20.    The Debtor's office space is leased by Sysorex from MFS Dulles, LLC MFS-ABS Dulles, LLC, SFLP Dulles, LLC, ABS Dulles, LLC Edison Dulles, LLC, NM Dulles, LLC and SS Dules, LLC (collectively, the "**Landlord**"), the successors in interest to 13880 Dulles Center Corner Metro LLC. Sysorex is party to a lease dated December 8, 2021 between 13880 Dulles Center Corner Metro LLC, the predecessor in interest to the Landlord (the "**Lease**"), for office space in Suite 120 at 13880 Dulles Center Corner Lane, Herndon, Virginia (the "**Leased Premises**").  The Debtor operates out of the Leased Premises. The term of the Lease expires on

---

[3] Canon is not a critical vendor since the Debtor no longer does business with Canon.

May 31, 2025.The Landlord has filed suit against SGS and Sysorex seeking judgment for unpaid rent and eviction of the Debtor from the Leased Premises. Pursuant to the summons, there were hearings scheduled on April 18 and April 30, 2025 at 9:30 am before the General District Court of Fairfax County, Virginia.

21.     The Debtor has offered nominal use and occupancy payments to the landlord to allow it to remain the subject premises long enough to conduct the intended 363 sale, but h e landlord rejected the proposal.

## First Day Motions

22.     To preserve the value of the business pending a sale, the Debtor's immediate objective is to maintain a business-as-usual atmosphere during the pendency of this chapter 11 case with as little additional interruption or disruption to the Debtor's business operations as possible. In that regard, the Debtor will file certain requests for immediate relief on shortened notice (the "**First Day Motions**"). I believe that if the Court grants the relief requested in each of the First Day Motions, the prospect for achieving these objectives will be substantially enhanced.

23.     I have reviewed each of the First Day Motions and proposed orders and the facts set forth therein are true and correct to the best of my knowledge, information and belief. Moreover, I believe that the relief sought in each of the First Day Motions and accompanying orders is vital to enable the Debtor to operate in chapter 11 while preserving the value of this business. I believe that immediate and irreparable harm will result to the Debtor and its estate if the relief sought in the First Day Motions is not granted because each of the First Day Motions involve matters of such a nature that any delay necessary to hear them in the ordinary course could cause serious and irreparable harm to the Debtor, its employees and its estate.

24.     The relief sought in the First Day Motions will enable the Debtor to preserve,

24079.1 21399531v2
CLIENTS\24079\1\21399531.v4-5/5/25

enhance and realize the value by allowing the Debtor to continue operations to generate revenue and preserve the Debtor's going concern value pending a sale of the business. As set forth in Schedule 10, the anticipated revenue that will be generated from the Debtor's ongoing operations over the next 13 weeks is almost $3.8 million. As described in the First Day Declaration and the Debtor's Schedules and Statement of Financial Affairs, the Debtor's value as a going concern greatly exceeds the liquidation value of its assets. The Debtor's ability to continue to generate revenue and maintain the value of its business as a going concern by continuing operations provides additional value.

*Cash Collateral Motion*

25.    The Debtor has determined, in the exercise of its sound business judgment, that it requires the relief sought in the First Day Motions, including the request to continue using cash collateral, to avoid the irreparable harm that would result from the Debtor ceasing its ongoing operations. The Debtor has a critical need to use cash collateral to pay various parties in the ordinary course of business and/or as authorized by this Court. Among other things, the continued use of Cash Collateral will enable the Debtor to continue to operate its business, maintain relationships with its customers, its contracts and to pay its vendors and employees and satisfy other ordinary operational costs that are essential to preserve estate value by continuing to operate its business in the ordinary course. The Debtor's greatest value is as an ongoing business and preserving the value of its ongoing operations preserves the value of the Lenders' collateral.

26.    If the Debtor does not pay its operating expenses, it will further increase the arrearages owed to important trade vendors and the Lenders, will risk eviction from its Leased Premises, and will keep SGS from satisfying existing contracts, which will further erode its revenue. Thus, in the absence of the continued authorization to use cash collateral, the Debtor's

24079.1 21399531v2
CLIENTS\24079\1\21399531.v4-5/5/25

ability to operate its business will be jeopardized, causing immediate and irreparable harm to the

Debtor's estate, creditors, employees, and all other stakeholders by virtue of the loss of its

business.

*Sale Motion*

27.     The Debtor experienced funding difficulties that have disrupted its ability to

fulfill existing orders and to take advantage of new opportunities. This in turn has depressed the

Debtor's revenue and caused it to obtain financing from SouthStar, which further decreases its

margins. To address these issues, the Debtor explored a number of strategic alternatives and

determined that a sale of its business as a going concern is the best approach. The Debtor has

been marketing its Business for approximately 37 months and commenced this bankruptcy to

facilitate a sale of its Business. Through the Sale Motion, and the separate declaration in support

thereof, the Debtor requests urgent approval of its proposed Bidding Procedures, form of

Purchase Agreement, notices for the Auction and to schedule a Sale Hearing to expedite the

Debtor's sale process and ensure a smooth and efficient sale process.

## **Additional Local Rule Requirements**

28.     Local Rule 1007-2(a)(2): Not applicable because the Debtor's case was not

originally commenced under Chapter 7 or 13.

29.     Local Rule 1007-2(a)(3): Not applicable because no committee was organized

prior to the Petition Date.

30.     Local Rule 1007-2(a)(4): *Schedule 1* hereto lists the following information with

respect to each of the holders of the Debtor's twenty (20) largest unsecured claims, excluding

claims of insiders: the creditor's name, address (including the number, street, apartment or suite

number, and zip code, if not included in the post office address), telephone number, e-mail

11

address, the name(s) of persons(s) familiar with the Debtor's accounts if known, the amount of

the claim, and an indication of whether the claim is contingent, unliquidated, disputed or

partially secured.

31.    <u>Local Rule 1007-2(a)(5)</u>: *Schedule 2* hereto provides the following information

with respect to each of the holders of the Debtor's five (5) largest secured claims: the creditor's

name and address (including the number, street, apartment or suite number, and zip code, if not

included in the post office address), the amount of the claim, a brief description of the claim, an

estimate of the value of the collateral securing the claim, and whether the claim or lien is disputed.

32.    <u>Local Rule 1007-2(a)(6)</u>: *Schedule 3* is a summary of the Debtor's assets and

liabilities.

33.    <u>Local Rule 1007-2(a)(7)</u>: Not applicable because none of the securities of the

Debtor are publicly held.

34.    <u>Local Rule 1007-2(a)(8)</u>: Not applicable because none of the Debtor's property is

in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of

rents or secured creditor, or agent for any such entity, including the name, address, telephone

number of each such entity and the court in which any proceeding related thereto is pending.

35.    <u>Local Rule 1007-2(a)(9)</u>: *Schedule 4* the Debtor operates its business from the

Leased Premises described in paragraph 20 above. The Debtor is not a party to a lease, sublease

or other agreement regarding the Leased Premises.

36.    <u>Local Rule 1007-2(a)(10)</u>: *Schedule 5* hereto provides the location of the Debtor's

substantial assets, the location of its books and records, and the nature, location, and value of any

assets held by the Debtor outside the territorial limits of the United States.

37.    <u>Local Rule 1007-2(a)(11)</u>: *Schedule 6* hereto provides the nature and present

status of each action or proceeding, pending or threatened, against the Debtor or its property

where a judgment against the Debtor or a seizure of its property is imminent.

38.    <u>Local Rule 1007-2(a)(12)</u>: *Schedule 7* hereto provides a list of the names of the

individuals who comprise the Debtor's existing senior management, their tenure with the Debtor,

and a brief summary of their relevant responsibilities and experience.

39.    <u>Local Rule 1007-2(b)(1)</u>: *Schedule 8* hereto provides the estimated amount of

weekly payroll to employees (exclusive of officers, directors, stockholders and partners) for the

thirty (30) day period following the Petition Date.

40.    <u>Local Rule 1007-2(b)(2)</u>: *Schedule 9* hereto provides the estimated amount of

weekly payroll to the Debtor's officers, stockholders and directors for the thirty (30) day period

following the Petition Date.

41.    <u>Local Rule 1007-2(b)(3)</u>: *Schedule 10* hereto provides a schedule of estimated

cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to

accrue but remain unpaid, other than professional fees, and any other information relevant to an

understanding of the foregoing for the thirty (30) day period following the Petition Date.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May

5, 2025

A. Zaman Khan

24079.1 21399531v2
CLIENTS\24079\1\21399531.v4-5/5/25

## Schedule 1

**20 Largest Unsecured Claims (Excluding Insiders)**

**SEE ATTACHED**

24079.1 21399531v2
CLIENTS\24079\1\21399531.v4-5/5/25

**Schedule 2**

**5 Largest Secured Claims**

| Creditor | Amount of Claim | Description of Claim | Value of Collateral Securing Claim | Lien or Claim Disputed (Y/N) |
|---|---|---|---|---|
| Cavalry Fund I LP, as collateral agent for holders of 12.5% Original Issue Discount Senior Secured Convertible Debentures | $25,666,455 | Guarantee of Debentures | $25 million | N |
| SouthStar Capital, LLC | $1,651,914.70 | Secured Financing | $2,330,819.30 | N |

20

## Schedule 3

### Summary of Debtor's Assets and Liabilities

Pursuant to Local Bankruptcy Rule 1007-2(a)(6), the following unaudited approximate financial information is the latest available information and reflects the Debtor' financial condition as of April 21, 2025.

Total Assets:          $1,960,319.87 approx.

Total Liabilities:     $30,967,828.61 approx.

## Schedule 4

**Premises Owned or Leased**

**NONE**

## Schedule 5

### Location of Debtor's Significant Assets, Books and Records and Assets Outside of U.S.

| Asset | Location | Value (if Outside U.S.) |
|---|---|---|
| Books and Records | 13880 Dulles Center Corner Lane, Suite 120, Herndon, VA | N/A |
| Contract Receivables | 13880 Dulles Center Corner Lane, Suite 120, Herndon, VA | N/A |
| Equipment and Inventory | 13880 Dulles Center Corner Lane, Suite 120, Herndon, VA | N/A |

**Schedule 6**

**Litigation**

| Action or proceeding | Nature of the Action | Status of the Action |
|---|---|---|
| Canon U.S.A., Inc. v. Sysorex Government Services Inc., United States District Court, Eastern District of New York, bearing index no. 23-cv-8001 (DLI) (LGD) (Canon I) | Action to collect on invoices. | Concluded. Judgment entered September 27, 2024 in the amount of $782,162.27 plus post-judgment interest entitled Canon U.S.A. Inc. v. Sysorex Government Services Inc. in the United States District Court, Eastern District of New York in case bearing index no. 23-cv-8001 (DLI) (LGD) |
| MFS Dulles LLC, et al., v. Sysorex, Inc. and Sysorex Government Systems Inc., GV25007865-00, Fairfax, VA County District Court | Action by Landlord for non-payment and to obtain possession of premises 13880 Dulles Center Corner Lane, Suite 120, Herndon, VA | Preliminary Conference/Hearing scheduled for April 18, 2025 at 9:00 am.  Informed that possession has been granted by L&T court. |
| Canon U.S.A., Inc. v. Sysorex, Inc., Wayne Wasserberg, Asaduz Zaman Khan, 2:24-cv-08042, United States District Court, Eastern District of New York (Canon II) | Action to recover on the judgment entered in Canon I. | Initial discovery underway, letter request granted for filing motion to dismiss by defendants, settlement discussions undertaken. |

CLIENTS\24079\1\21399531.v4-5/5/25

**Schedule 7**

**Senior Management**

| Name | Title | Tenure | Experience/Responsibilities |
|---|---|---|---|
| Asaduz Zaman Khan | President | Present | Mr. Khan is responsible for all operations of the company including, but not limited to instruction, development, optimization of development, overseeing business operations and organizational management of the company, and monitoring management of employees. |
| Vincent | Chief Financial Officer | Present | Mr. Loiacono is responsible for all financial operations and human resources. Mr. Loiacono manages the day to day issuance of invoices, collections, SGS books, federal/state taxes, and financing. |
| Wayne Wasserberg | Chief Executive Officer, Sysorex, Inc. | Present | Mr. Wasserberg has overall responsibility of Sysorex, Inc. and its subsidiaries. |

CLIENTS\24079\1\21399531.v4-5/5/25

## Schedule 8

### Estimated Weekly Payroll (Non-Management)

Pursuant to Local Rule 1007-2(b)(1), the estimated amount of gross payroll to employees (exclusive of officers, directors, stockholders and partners) for the thirty (30) day period following the Petition Date is approximately $65,000 not including fringe benefits.

CLIENTS\24079\1\21399531.v4-5/5/25

## Schedule 9

**Estimated Weekly Payroll (Management)**

Pursuant to Local Rule 1007-2(b)(1), the estimated amount of gross payroll to the Debtor's officers, stockholders and directors for the thirty (30) day period following the Petition Date is approximately $45,833.34 if the funds are available.

CLIENTS\24079\1\21399531.v4-5/5/25

## Schedule 10

### Cash Receipts and Disbursements, Net Cash Gain or Loss, Unpaid Obligations and Receivables

Pursuant to Local Bankruptcy Rule 1007-2(b)(3), the following provides the estimated aggregated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue that remain unpaid (other than professional fees) for the 30-day period following the Petition Date.

24079.1 21399531v2
CLIENTS\24079\1\21399531.v4-5/5/25