**CULLEN AND DYKMAN LLP**
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Fl.
Uniondale, NY 11553
(516) 357-3700
Email: rpreite@cullenllp.com

Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Fl.
New York, New York 10004
(212) 510-2296
Email: mmcmahon@cullenllp.com
          kchristodoulou@cullenllp.com

*Proposed Attorneys to Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SYSOREX GOVERNMENT SERVICES, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 25-_____ (____) |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. § 361 AND 363 (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) <u>SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001(b)</u>**

Sysorex Government Services, Inc., debtor and debtor-in-possession (the "**Debtor**" or "**SGS**") in the above-captioned case (the "**Case**"), by and through its proposed counsel Cullen and Dykman LLP, hereby submits this motion (the "**Motion**") pursuant to sections 361 and 363 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* (the "**Bankruptcy Code**"), Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "**Local Rules**") and for entry of an emergency interim order (the

"**Interim Order**") substantially in the form annexed hereto as Exhibit 1: (i) authorizing the Debtor to use cash collateral ("**Cash Collateral**") in accordance with the terms of the budget annexed hereto as Exhibit 2 (the "**Budget**") in order to avoid immediate and irreparable harm to the Debtor and its estate; (ii) granting adequate protection in the form of a replacement liens to the Debtor's pre-petition senior secured lenders; and (iii) scheduling a final hearing (the "**Final Hearing**") to consider entry of a final order (the "**Final Order**") authorizing any requested relief not granted under the Interim Order on a final basis. In support of the Motion, the Debtor will rely on the *Declaration of Zaman Kahn Pursuant To Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petition* (the "**First Day Declaration**"), and respectfully states as follows:

## PRELIMINARY STATEMENT[1]

The Debtor provides information technology solutions primarily to federal, state and local governments. These solutions include cybersecurity, professional services, engineering support, IT consulting, enterprise level technology, networking, wireless, help desk and custom IT solutions. Since its founding, SGS has served its customers by offering products and services from key industry vendors such as Aruba, Cisco, Dell, GETAC, Microsoft, Panasonic, Samsung, TidalWave, ShawnTech, Tek84 and others. The Debtor provides its customers with comprehensive solutions incorporating leading products and services across a variety of technology practices and platforms such as cyber, cloud, networking, security, and mobility. SGS utilizes its professional services, consulting services and partners to develop and implement these solutions. SGS's sales and marketing efforts in collaboration with its vendor partners allow it to reach multiple public sector customer segments in federal, state and local governments, as well as educational institutions.

---

[1] Capitalized terms used in this preliminary statement shall have meanings ascribed to them in the rest of this Motion or in the First Day Declaration, as applicable.

2

As set forth in detail below and in the First Day Declaration, the Debtor experienced funding difficulties that have disrupted its ability to fulfill existing orders and to take advantage of new opportunities. This in turn has depressed the Debtor's revenue and caused it obtain financing from SouthStar, which further decreases its margins. To address these issues, the Debtor explored a number of strategic alternatives and determined that a sale of its business as a going concern is the best approach. As described in the First Day Declaration and the Debtor's Schedules and Statement of Financial Affairs, the Debtor's value as a going concern greatly exceeds the liquidation value of its assets. The Debtor requires continued financing under its pre-petition factoring agreement with SouthStar to fund its continued operations and maintain the going concern value of its business pending its sale.

The Debtor have contacted counsel for SouthStar regarding the bankruptcy filing. The Debtor intends to discuss post-petition use of Cash Collateral with the Lenders and the Debtor is hopefully that a consensual use of Cash Collateral can be negotiated before the Final Hearing. Nonetheless, the Debtor requires use of the Cash Collateral on an immediate basis to ensure that it can continue operating for the benefit of its employees, creditors, and customers and avoid the irreparable harm that would result if the company was denied use of Cash Collateral for its operations. The Debtor further seeks authority to use Cash Collateral going forward on a final basis following a Final Hearing scheduled upon sufficient notice to parties in interest in this Case.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.  The statutory predicates for the relief sought herein are sections 361 and 363 of the

Bankruptcy Code, Bankruptcy Rules 4001and 9014 and Local Rule 4001-2.

## BACKGROUND

**A.   General**

3.   On May 5, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

4.   The Debtor has remained in possession of its property and continues in the operation and management of its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.   No official committee of unsecured creditors has been appointed by the Office of the United States Trustee for the Southern District of New York (the "**US Trustee**") in this Case.

6.   The Debtor filed the First Day Declaration setting forth a more detailed factual background of the Debtor's business and operations, as well as the events leading to the filing of its Case and is incorporated herein by reference.

**B.   Pre-Petition Secured Debt**

   **i.   Debentures**

7.   SGS is a subsidiary of Sysorex, Inc. ("**Sysorex**") and has guaranteed Sysorex's obligations under the Security Agreement dated July 7, 2021 whereby Sysorex issued 12.5% Original Issue Discount Senior Secured Convertible Debentures (the "**Debentures**"). SGS, along with other subsidiaries of Sysorex, has jointly and severally guaranteed payment of the Debentures (the "**Guarantee**"). SGS has pledged a security interest in substantially all of its assets to secure the prompt payment, performance, and discharge in full of all obligations under the Debentures and the Guarantee. Cavalry Fund I acts as the agent for the Debenture Holders. As of the Petition Date, approximately $26,666,455 is owed to the Debenture Holders, which is

guaranteed by the Debtor and secured by a lien on substantially all of the assets of the Debtor.

### ii. SouthStar Capital, LLC

8. SGS is also party to a Sale and Assignment of Accounts with SouthStar Capital, LLC ("**SouthStar**" and together with the Debenture Holders, the "**Lenders**") pursuant to which SouthStar provides the Debtor financing by paying the Debtor up to 85% of the face amount of account receivables accepted by SouthStar, subject to certain charges, including (i) 0.80% of the face amount for the first ten days after payment, (ii) 0.90% for each additional ten-day period; (iii) an additional 1.00% per ten-day period for invoices exceeding 60 days, and (iv) transactional administrative fees and other charges as specified in the agreement. As of the Petition Date the Debtor owed SouthStar approximately $1.5 million. The Debtor's obligations under the SouthStar Agreement are secured by a first priority security interest in substantially all of the assets of the Debtor.

### C. The Immediate Need for Use of Cash Collateral

9. The Debtor has determined, in the exercise of its sound business judgment, that it requires use of Cash Collateral on an immediate basis to avoid the irreparable harm that would result from the Debtor ceasing its ongoing operations. The Debtor has a critical need to use Cash Collateral to pay, in accordance with the Budget, various parties in the ordinary course of business and/or as authorized by this Court. Among other things, the continued use of Cash Collateral will enable the Debtor to continue to operate its business, maintain relationships with its customers, its contracts and to pay its vendors and employees and satisfy other ordinary operational costs that are essential to preserve estate value by continuing to operate its business in the ordinary course. The Debtor's greatest value is as an ongoing business and preserving the value of its ongoing operations preserves the value of the Lenders' collateral.

10. If the Debtor does not pay its operating expenses, it will further increase the arrearages owed to important trade vendors and the Lenders, will risk eviction from its leased office space, and will keep SGS from satisfying existing contracts, which will further erode its revenue. Thus, in the absence of the continued authorization to use Cash Collateral, the Debtor's ability to operate its business will be jeopardized, causing immediate and irreparable harm to the Debtor's estate, creditors, employees, and all other stakeholders by virtue of the loss of its business. Accordingly, the Debtor's continued use of Cash Collateral is essential in order to enable the Debtor to pay its ordinary operating costs and expenses during the pendency of this Case and preserve the value of the estate for the benefit of all parties in interest.

## BANKRUPTCY RULE 4001(c) AND LOCAL RULE 4001-2 REQUIREMENTS

11. Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2, the following sets forth a statement of the material provisions of the Interim Order[2]:

- BR 4001(b)(1)(B)(i): The Debenture Holders and SouthStar are the entity(ies) with an interest in the Cash Collateral. [Interim Order, ¶D]

- BR 4001(b)(1)(B)(ii): The purpose of the proposed use of Cash Collateral is to pay for The Debtor's ordinary, necessary and reasonable operating expenses including, but not limited to, payroll, payroll taxes employee benefits, vendor payments, insurance, rent, maintenance, and other goods and services incidental to the Debtor's business. [Interim Order, ¶¶E and 3].

- BR 4001(b)(1)(B)(iii) and LBR 4001-2(a)(1): The Debtor has submitted a Budget (Exhibit 2) which lists the operating expenses reasonably expected to be incurred during the 13 weeks following the Petition Date that are within the ordinary course of the Debtor's business. The amount of Cash Collateral that the Debtor seeks authority to use on an interim basis is as set forth in the Budget. The Debtor proposes to use Cash Collateral on an ongoing basis subject to updated budgets to be provided to the Debenture Holders and SouthStar. [Interim Order, ¶3].

- LBR 4001-2(a)(4)(B)(iv): The Debtor anticipates providing adequate protection to the Debenture Holders and SouthStar in the form of replacement liens. The Debtor believes

---

[2] This statement is qualified in its entirety by reference to the applicable provisions of the Interim Order. To the extent there exists any inconsistency between this statement and the provisions of the Interim Order, the Interim Order shall control.

6

    this protection is adequate when considered the potential diminution in the Cash Collateral. [Interim Order, ¶4].

- <u>LBR 4001-2(a)(5)</u>: The Debtor is seeking approval of a carve-out for professional fees as set forth further herein and in the Interim Order, however the Debtor is not seeking authority to pay any professional fees pursuant to the Interim Order. At least for the interim period, the requested carve-out does not cover creditors' committee professionals, as a creditors' committee has not been appointed. [Interim Order, ¶5]. The Debtors will be seeking authority to pay professional fees pursuant to a Final Order when one is filed.

## **RELIEF REQUESTED**

    12.    By this Motion, the Debtor seeks entry of an Interim Order and Final Order, pursuant to sections 361 and 363 of the Bankruptcy Code, Bankruptcy Rules 4001 and 9014 and Local Rule 4001-2: (i) authorizing the Debtor to use Cash Collateral in accordance with the Budget in order to avoid immediate and irreparable harm to the Debtor and its estate; (ii) granting adequate protection in the form of replacement liens to the Lenders; and (iii) scheduling a Final Hearing.

    13.    It remains the Debtor's desire to obtain the consent of the Lenders to the use of Cash Collateral prior to the Final Hearing. However, pending a consensual arrangement, the Debtor seeks Court approval to use Cash Collateral in accordance with the Budget.

    14.    In consideration for the use of Cash Collateral and to secure only the Debtor's post-petition use of Cash Collateral and any diminution of the value thereof, the Debtor proposes, subject to Court approval, to grant the Lenders post-petition liens and security interests (the "**Replacement Lien**") in the personal property that constitutes the Lenders' collateral on a post-petition basis (the "**Post-Petition Collateral**") (excluding Chapter 5 causes of action and recoveries, if any, and subject to the Carve-Out), which would maintain the same priority, validity and enforceability as the Lenders' respective liens on their collateral. In addition, the Debtor submits that maintaining the Debtor's operations pending a sale of its business and enabling a sale as a going concern preserves the value of the Lenders' collateral.

**BASIS FOR RELIEF REQUESTED**

A. **The Debtor's Request for Use of Cash Collateral is Warranted and Failure to Obtain Immediate Access to Cash Collateral Will Result in Immediate and Irreparable Harm**

15. A debtor's use of property of the estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part as follows:

> If the business of [the debtor] is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

16. Pursuant to Bankruptcy Code section 363(c)(2), a debtor may use cash collateral if each entity that has an interest in such cash collateral consents, or if the Court, after notice and a hearing, authorizes the use of cash collateral. 11 U.S.C. § 363(c)(2); *see also In re Cerrico Realty Corp.*, 127 B.R. 319, 321 (Bankr. E.D.N.Y. 1991). "Cash Collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts and other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a). Courts repeatedly have recognized that use of cash collateral is appropriate where necessary to preserve a debtor's ability to reorganize and thus maximize the value of an estate for all interested parties. *See In re Realty SW Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977).

17. The Debtor has an urgent need for the immediate use of Cash Collateral pending the Final Hearing on this Motion and seeks to use Cash Collateral existing after the Petition Date in accordance with the Budget and the Interim Order to maintain and ensure timely and adequate funding for essential business operations. The Debtor has an immediate need for access to Cash Collateral to, among other things, pay its expenses in the Budget all of which are required to

8

preserve and maintain the Debtor's value for the benefit of all parties in interest.

18.  Absent emergency use of Cash Collateral to fund operating costs incurred in the ordinary course of its business operations, the Debtor may not be able to continue operations and the value of the Debtor's business as a going concern will be irreparably harmed. Among other things, the Debtor requires the use of Cash Collateral to pay payroll, rent, utilities, trade vendors and other obligations as set forth in the Budget. The Debtor, therefore, believes that it requires the immediate use of Cash Collateral to avoid immediate and irreparable harm to the Debtor, its estate and its creditors.

B.  **The Proposed Adequate Protection is Appropriate and Should be Approved**

19.  Section 363(e) of the Bankruptcy Code requires the Court to condition a debtor's use of cash collateral as is necessary to provide adequate protection of the interest in the cash collateral claimed by a party upon that party's request. 11 U.S.C. § 363(e) ("[T]he court, with or without hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest.").

20.  Section 361 of the Bankruptcy Code provides three non-exclusive means of providing adequate protection. These alternatives include providing an additional or replacement lien to the extent of a decrease in the value of the property. *See* 11 U.S.C. § 361(2). The Lenders' interests in their collateral, including Cash Collateral, is also protected by preserving the value of their collateral by maintaining the Debtor's business operations to enable a sale as a going concern.

21.  What constitutes adequate protection is decided on a case-by-case basis, and courts have broad flexibility under section 361 of the Bankruptcy Code in determining what constitutes adequate protection. *See*, *e.g.*, *In re Realty SW Assocs.*, 140 B.R. at 366; *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (the application of adequate protection "is left to the

vagaries of each case, but its focus is protection of the secured creditor from diminution of the value of its collateral during the reorganization process"); *In re 495 Central Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (same). The focus of the requirement is to protect a secured creditor from the diminution in value of its interest in the particular collateral during the period of use. *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994) ("[T]he whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (quoting *MBank Dallas N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987)).

22.    Courts have held that adequate protection may be demonstrated by showing that the secured creditor's interest in the collateral is preserved by the debtor's use of the cash collateral in a manner that maintains or enhances the collateral's value. *See In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a secured creditor was adequately protected when cash collateral was used to pay necessary operating expenses); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105-06 (Bankr. S.D.N.Y. 1991) (authorizing debtor to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral and existing equity cushion); *McCombs Props. VI, Ltd. v. First Tex. Sav. Ass'n* (*In re McCombs Props. VI, Ltd.*), 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (holding that committing to use cash collateral for operating expenses substantially eliminated the risk of diminution of the secured creditor's interest in the collateral).

   *(i)    Replacement Lien*

23.    Pursuant to sections 361 and 363(e) of the Bankruptcy Code, as adequate protection of the Lenders' interest in Cash Collateral to the extent of any diminution in value of their collateral from and after the Petition Date resulting from the Debtor's post-petition use of Cash Collateral,

10

the Debtor proposes granting the Lenders, subject to the Carve-Out (defined below), the Replacement Lien on the Post-Petition Collateral (excluding Chapter 5 causes of action and recoveries, if any). The Replacement Lien on Post-Petition Collateral shall maintain the same priority, validity and enforceability as the Lenders' respective liens on their collateral. The Replacement Liens shall be recognized only to the extent of the diminution in value of the Lenders' collateral after the Petition Date resulting from the Debtor's use of the Cash Collateral during the bankruptcy case. *United Savings Association of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988) (Adequate protection requires only that the value of the creditor's interest in the cash collateral be protected from diminution while the debtor uses the cash collateral).

24. In addition, the Debtor respectfully requests that the Court implement a "carve-out" from the Replacement Lien (the "**Carve-Out**") which includes: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee, in such amounts as agreed to by the US Trustee or as determined by order of the Court, pursuant to 28 U.S.C. § 1930(a) and 31 U.S.C. § 3717; (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (iii) all unpaid fees and expenses incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code to the extent allowed by the Court. As a creditors' committee has not been appointed, the Debtor does not currently seek to include expenses of committee professionals in the Carve-Out. To the extent a creditors' committee is ultimately appointed by the US Trustee, any necessary modifications will be made. The Debtor proposes that the Carve-Out take effect immediately and remain unaltered after payment of interim fees.

*(ii)    <u>Use of Cash Collateral to Enhance Estate Value</u>*

25. The Debtor further submits that use of Cash Collateral will enable the Debtor to

11

preserve, enhance and realize the value by allowing the Debtor to continue operations to generate revenue and preserve the Debtor's going concern value pending a sale of the business. As set forth in the Budget, the anticipated revenue that will be generated from the Debtor's ongoing operations over the next 13 weeks is almost $3.8 million. As described in the First Day Declaration and the Debtor's Schedules and Statement of Financial Affairs, the Debtor's value as a going concern greatly exceeds the liquidation value of its assets. The Debtor's ability to continue to generate revenue and maintain the value of its business as a going concern by continuing operations provides additional adequate protection.

26. The terms and conditions on which the Debtor requests authority to use Cash Collateral have been carefully designed to meet the dual goals of sections 361 and 363 of the Bankruptcy Code. If the Interim Order is entered, the Debtor will have working capital to operate its business and thus, maximize the value of the assets for the benefit of its estate. At the same time, the Lenders will be adequately protected in a manner consistent with the requirements of the Bankruptcy Code. Accordingly, the Debtor respectfully submits that the proposed adequate protection will sufficiently protect the Lenders' interest in Cash Collateral to the extent of any secured interest in the Cash Collateral, from any diminution in value and should be approved.[3]

## INTERIM APPROVAL AND REQUEST FOR FINAL HEARING

27. Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. However, upon request, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of

---

[3] Notwithstanding the foregoing, the Debtor reserves all rights with respect to the proposed adequate protection, including to present evidence in support thereof, as it relates to the necessity to provide alternate forms, if any, of adequate protection to the Lenders.

cash collateral to the extent necessary to avoid immediate and irreparable harm to the estate.

28.     As set forth above, absent relief on an interim basis pursuant to the Interim Order, the Debtor will be unable to satisfy its immediate payment obligations, including payroll and other operating expenses. Given the immediate and irreparable harm to be suffered by the Debtor absent interim relief, the Debtor respectfully requests that the Court conduct a preliminary hearing on the Motion and (a) authorize the Debtor to utilize Cash Collateral pursuant to the Interim Order pending the Final Hearing, and (b) schedule the Final Hearing.

## NOTICE

29.     Notice of this Motion will be given to (a) the United States Trustee for the Southern District of New York; (b) the Debtor's twenty (20) largest unsecured creditors; (c) the Lenders; (d) the Internal Revenue Service; (e) Virginia Dept. of Tax Admin Personal Prop Tax & Business; and (f) any other party who has requested to receive notices in this Case (the "**Notice Parties**"). The Debtor submits that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

30.     No previous request for the relief sought in the Motion has been made by the Debtor to this or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests the entry of the Interim Order substantially similar to the form of order annexed hereto as Exhibit 1 granting the relief requested herein, together with such other and further relief as the Court deems just and proper.

Dated: May 5, 2025

By: /s/ *Ralph Preite*
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Floor
Uniondale, NY 11553
(516) 357-3700
Email: rpreite@cullenllp.com

13

                Michelle McMahon, Esq.
                Kyriaki Christodoulou, Esq.
                One Battery Park Plaza, 34th Fl.
                New York, New York 10004
                (212) 510-2296
                Email: mmcmahon@cullenllp.com
                          kchristodoulou@cullenllp.com