**CULLEN AND DYKMAN LLP**
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Fl.
Uniondale, New York 11553
(516) 357-3700
Email: rpreite@cullenllp.com

Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Fl.
New York, New York 10004
(212) 510-2296
Email: mmcmahon@cullenllp.com
         kchristodoulou@cullenllp.com

*Proposed Attorneys to Sysorex Government Services, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SYSOREX GOVERNMENT SERVICES, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10920 (JPM) |

**DEBTOR'S AMENDED MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S BUSINESS; (B) APPROVING THE FORM OF PURCHASE AGREEMENT; (C) APPROVING THE FORM AND MANNER OF SERVICE OF AUCTION NOTICE; AND (D) SCHEDULING AN AUCTION; (II) APPROVING SALE OF THE BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND (III) GRANTING RELATED RELIEF**

Sysorex Government Services, Inc., debtor and debtor-in-possession (the "**Debtor**" or "**SGS**") in the above-captioned case (the "**Case**"), by and through its proposed counsel Cullen and Dykman LLP, hereby submits this motion (the "**Motion**") pursuant to sections 105, 363, 365 and 503 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101-1532, et seq. (the "**Bankruptcy Code**"), and Rules 2002, 6004, 9006, and 9007 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), for entry of an order (the "**Bidding Procedures Order**"),

substantially in the form annexed hereto as Exhibit A: (a) approving bidding procedures ("**Bidding**

**Procedures**"), substantially in the form annexed to the Bidding Procedures Order as Exhibit 1,

related to the sale and proposed auction of the Debtor's business (the "**Business**") pursuant to

sections 363(b), (d) (f), and (m) of the Bankruptcy Code; (b) approving the form of proposed asset

purchase agreement (the "**Purchase Agreement**"), a copy of which is annexed hereto as Exhibit

B, solely to the extent of its use as a form which all bidders for the Business must follow; (c)

scheduling an auction (the "**Auction**") and a hearing (the "**Sale Hearing**") to approve the sale of

the Business; and (e) approving the form and manner of notice (the "**Auction Notice**") of the

Auction and Sale Hearing substantially in the form annexed hereto as Exhibit C.

The Debtor further requests that at the Sale Hearing, subject to the results of the Auction

and the Bidding Procedures set forth herein, this Court enter an order (the "**Sale Order**"),

substantially in the form annexed hereto as Exhibit D, approving and authorizing the sale (the

"**Sale**") of Business, free and clear of any pledges, liens, security interests, encumbrances, claims,

charges, options and interests thereon, pursuant to the Purchase Agreement, as modified to

incorporate the terms of any Successful Bid (as defined herein). In support of the Motion, the

Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT[1]

The Debtor provides information technology solutions primarily to federal, state and local

governments. These solutions include cybersecurity, professional services, engineering support,

IT consulting, enterprise level technology, networking, wireless, help desk and custom IT

solutions. Since its founding, SGS has served its customers by offering products and services from

---

[1] Capitalized terms used in this preliminary statement shall have meanings ascribed to them in the rest of this Motion or in the First Day Declaration, as applicable.

CLIENTS\24079\1\21404247.v2-5/6/25

key industry vendors such as Aruba, Cisco, Dell, GETAC, Microsoft, Panasonic, Samsung, TidalWave, ShawnTech, Tek84 and others. The Debtor provides its customers with comprehensive solutions incorporating leading products and services across a variety of technology practices and platforms such as cyber, cloud, networking, security, and mobility. SGS utilizes its professional services, consulting services and partners to develop and implement these solutions. SGS's sales and marketing efforts in collaboration with its vendor partners allow it to reach multiple public sector customer segments in federal, state and local governments, as well as educational institutions.

As set forth in detail below and in the First Day Declaration, the Debtor experienced funding difficulties that have disrupted its ability to fulfill existing orders and to take advantage of new opportunities. This in turn has depressed the Debtor's revenue and caused it to obtain financing from SouthStar, which further decreases its margins. To address these issues, the Debtor explored a number of strategic alternatives and determined that a sale of its business as a going concern is the best approach. As described in the First Day Declaration, the Debtor has been marketing its Business for approximately 37 months and commenced this bankruptcy to facilitate a sale of its Business. The Debtor intends to use the proceeds of Sale to fund a plan of reorganization (the "**Plan**") and distribution to creditors under the Plan.

Through this Motion, the Debtor requests approval of its proposed Bidding Procedures, Purchase Agreement, notices for the Auction and Sale Hearing and following the Sale Hearing, the Sale to the successful bidder.

## <u>JURISDICTION AND VENUE</u>

1.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant

CLIENTS\24079\1\21404247.v2-5/6/25

to 28 U.S.C. §157(b)(2).

2.      The statutory predicates for the relief sought herein are sections 361 and 363 of the

Bankruptcy Code, Bankruptcy Rules 4001and 9014 and Local Rule 4001-2.

### BACKGROUND

**A.**   **General**

3.      On May 5, 2025 (the "**Petition Date**"), the Debtor filed a voluntary petition for

relief pursuant to chapter 11 of the Bankruptcy Code.

4.      The Debtor has remained in possession of its property and continues in the

operation and management of its business as a debtor-in-possession pursuant to sections 1107

and 1108 of the Bankruptcy Code.

5.      No official committee of unsecured creditors has been appointed by the Office of

the United States Trustee for the Southern District of New York (the "**US Trustee**") in this Case.

6.      The Debtor filed the First Day Declaration setting forth a more detailed factual

background of the Debtor's business and operations, as well as the events leading to the filing of

its Case and incorporated herein by reference.

     ***i.***   ***Marketing of the Business***

7.      The Debtor has been marketing its assets and Business for approximately three

years, including working with Timothy Orr of Jameson Capital, LLC (the "**Broker**") to market

and pursue a sale of the Business. The Debtor is in discussions with the Broker to continue its

services post-petition and if an agreement is reached will file an application seeking to retain the

Broker to market and sell the Business. A description of the pre-petition marketing efforts of the

Debtor and the Broker are set forth in the First Day Declaration and the Declaration of Zaman

Khan in Support of Bidding Procedures and Sale Motion (the "**Zaman Declaration**") and

4

incorporated herein.

*ii.*        ***The Purchase Agreement***

10.       The Successful Bidder for the Business will be party to the proposed Purchase Agreement with the Debtor, as modified to incorporate the terms of the Successful Bid. The principal terms of the Purchase Agreement are summarized and highlighted as follows:[2]

| Summary of Purchase Agreement | |
| --- | --- |
| Parties | Seller: The Debtor<br>Purchaser: TBD |
| Asset | All assets of Seller as described in the Purchase Agreement |
| Purchase Price | TBD |
| Conditions to Closing | Entry of Sale Order and other criteria set forth in Section 10.1 of the Purchase Agreement |
| Closing Date | On or about thirty (30) days following the entry of Sale Order |

The full terms and conditions of the proposed transaction are set forth in the Purchase Agreement annexed as Exhibit B hereto and reference should be made to the Purchase Agreement for additional terms.

*iii.*      ***Bidding Procedures***

11.       To ensure that the Debtor receives the maximum value for the sale of the Business, the Debtor has begun actively marketing the Business and soliciting potential bidders and, based on the level of interest to date, intends to conduct an Auction. In connection with the Sale of the Business, the Debtor seeks the approval of the Bidding Procedures.

12.       The proposed Bidding Procedures are attached as Exhibit 1 to the Bidding Procedures Order (Exhibit A hereto), and below is a summary of the proposed procedures:[3]

---

[2] To the extent there is any inconsistency between the description of the Purchase Agreement in this Motion and the terms of the Purchase Agreement itself, the Purchase Agreement shall control.

[3] In the event of any inconsistency between this summary and Bidding Procedures, the Bidding Procedures will govern and control.

(a)    <u>**Provisions Governing Qualification of Bids and Bidders:**</u> To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be reasonably determined by the Debtor to satisfy each of the following conditions:

- <u>Bid Deadline</u>: Each Bid must be delivered to the Bid Notice Parties in writing on or before June 17, 2025 at 5:00 p.m. (EST).

- <u>Deposit:</u> Each Bid must be accompanied by a cash deposit, paid by wire transfer of immediately available funds or a certified check, in the amount of ten percent (10%) of the purchase price contained in the Purchase Agreement (as defined below), which deposit shall be held in an escrow account to be identified and established by the Seller (the "**Deposit**").

- <u>Higher and Better Terms</u>: The Debtor shall determine which Bid is the highest and best Bids for the Business.

- <u>Executed Agreement:</u> Each Bid must be based on the form Purchase Agreement and such Bid must include binding, executed, irrevocable transaction documents, signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a transaction of the Business. A Bid must also include a copy of the Purchase Agreement (including all exhibits thereto) marked against the form Purchase Agreement to show all changes requested by the Bidder. Both the Purchase Agreement and the marked copy thereof must be provided in both Microsoft Word and PDF format.

- <u>Scope of Bid/Lots</u>: A Bid must be for the entire Business.

- <u>Minimum Bid</u>: $2 million

- <u>Corporate Authority</u>: A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to consummate the proposed transaction; <u>provided</u> that, if the Bidder is an entity specially formed for the purpose of effectuating the transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the transaction by the equity holder(s) of such Bidder.

- <u>Disclosure of Identity of Bidder:</u> A Bid must fully disclose the identity of each entity and principal that will be bidding for or purchasing the Business, including any equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation. A Bid must also fully disclose any connections or agreements with the Seller or any other known, potential, prospective Bidder or Qualified Bidder, and/or any officer or trustee of the Debtor.

- <u>Proof of Financial Ability to Perform:</u> A Bid must include detailed, written

CLIENTS\24079\1\21404247.v2-5/6/25

evidence that the Debtor and its advisors may conclude demonstrates that the Bidder has and will continue to have the necessary financial ability to close the transaction. Such information must include, *inter alia,* the following:

- o   contact names and numbers for verification of financing sources;
- o   evidence of the Bidder's internal resources and proof of funding commitments in an aggregate amount equal to the Bid as are needed to close the transaction;
- o   any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Bidder has the ability to close the transaction.

- •   <u>Contact Information and Affiliates</u>: A Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

- •   <u>Contingencies</u>: Each Bid (a) may not contain representations and warranties, covenants, or termination rights of any kind, and (b) may not be conditioned on (i) obtaining financing, (ii) any internal approvals or credit committee approvals, or (iii) the outcome or review of due diligence.

- •   <u>Irrevocable</u>: Each Bid must be irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, (ii) closing of the Sale with the Successful Bidder, or (iii) the date the Bid is otherwise rejected under the Bidding Procedures.

- •   <u>Compliance with Diligence Requests</u>: The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Debtor to the reasonable satisfaction of the Debtor.

- •   <u>As-Is, Where-Is</u>: Each Bid must include a written acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Business prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Business in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the Business or the completeness of any information provided in connection therewith or the Auction.

- •   <u>Termination Fees</u>: The Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. §503 related in any way to the submission of its Bid or participation in any Auction.

- •   <u>Adherence to Bid Procedures</u>: By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit

a Bid or seek to reopen the Auction after conclusion of the Auction.

(b)  **Auction, Auction Procedures and Overbids**: If multiple Qualified Bids are submitted by the Bid Deadline, the Debtor will conduct the Auction to determine the highest and otherwise best Qualified Bid with respect to such Business.

- Participation: Only the Debtor and Qualified Bidders, in each case, along with their respective representatives and counsel, may attend the Auction (such attendance to be in person) and only the Qualified Bidders will be entitled to make any Bids at the Auction.

- The Debtor Shall Conduct the Auction. The Debtor and its advisors shall direct and preside over the Auction, and the Auction shall be transcribed. The Debtor may conduct the Auction and may augment or modify the procedures described herein in any manner it reasonably determines will result in the highest and otherwise best Qualified Bid(s), including, without limitation, by establishing rules at any Auction that include, without limitation, a single or multiple rounds, the use of sealed bidding, open outcry, or any other form of Bid. Any rules developed by the Debtor will provide that each Qualified Bidder will be permitted what the Debtor determines to be an appropriate amount of time to respond to the previous bid at the Auction.

- Auction Baseline Bids. Prior to commencement of the Auction, the Debtor may, but shall not be required to, provide each Qualified Bidder participating in the Auction with a copy of the Purchase Agreement that is the highest and otherwise best Qualified Bid for the Business as determined by the Debtor (such highest and otherwise best Qualified Bid, the "**Auction Baseline Bid**"). In addition, at the start of the Auction, the Debtor may, but shall not be required to, describe the terms of the Auction Baseline Bid.

- Anti-Collusion Representations. Each Qualified Bidder participating in the Auction must confirm that it (1) has not engaged in any collusion with respect to the bidding or Sale, (2) has reviewed, understands and accepts the Bidding Procedures and (3) has consented to the core jurisdiction of the Court.

- Terms of Overbids. The Debtor will accept Overbids, as further described below. An "**Overbid**" is any bid made at the Auction subsequent to the Debtor's announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

  (a)  Initial Overbid: The initial Overbid after and above the Auction Baseline Bid (the "**Initial Overbid**") shall be in an amount of 105% of the Auction Baseline Bid.

  (b)  Minimum Overbid Increments: Any Overbid after and above the Initial Overbid shall be made in increments of $100,000, in cash or in cash equivalents (the "**Minimum Overbid Increment**"). The Debtor

reserves the right to modify the Minimum Overbid Increment during the Auction.

(c)    <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, <u>provided</u>, <u>however</u>, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Purchase Agreement. Any Overbid must remain open and binding on the Bidder as provided herein.

At the Seller's discretion to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor), reasonably demonstrating such Bidder's ability to close the transaction proposed by such Overbid.

- <u>Jurisdiction of the Court</u>: All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the determination of what constitutes a Qualified Bid and the procedures used to make that determination, the Auction, and the construction and enforcement of the Qualified Bidder's fully executed sale and transaction documents, as applicable.

- <u>Additional Bids; Modifications</u>: All Qualified Bidders shall have the right to submit additional Bids and make additional modifications to the Purchase Agreement at the Auction, as applicable, provided that any such modifications to the Purchase Agreement on an aggregate basis and viewed in whole, shall not, in the Debtor's business judgment be less favorable to the Debtor than the terms of such original agreement.

- <u>Subsequent Bids</u>: Each Qualified Bidder must submit a subsequent Bid that satisfies the Minimum Overbid Increment in each round of bidding in order to continue participating in the Auction. Unless approved by the Debtor Qualified Bidders shall not be allowed to skip rounds of bidding for the Business once they participate in the Auction for the Business.

- <u>Continuance/Adjournment of Auction</u>: Subject to the deadlines set forth herein, the Debtor reserves the right, in its reasonable business judgment to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtor and individual Qualified Bidders, allow individual Qualified Bidders to consider how they wish to proceed, modify or supplement any or all of the Auction procedures or rules, or give Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, in consultation with the Consultation Parties may require, that the Qualified Bidder has sufficient internal resources, or has received sufficient

9

funding commitments, to consummate the proposed transaction at the prevailing Overbid amount.

- Sale Is As Is/Where Is. Except as otherwise may be provided in the Purchase Agreement, or any order by the Court approving any Sale as contemplated hereunder, the assets sold pursuant to the Bidding Procedures shall be conveyed at the closing of the purchase and sale in its then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**"

(c) **Closing the Auction**: The Auction will continue until the Debtor selects the Bid that represents the highest and otherwise best offer for the Business (a "**Successful Bid**," and the Bidder submitting such Successful Bid, a "**Successful Bidder**"). The Successful Bidder shall have the rights and responsibilities of the purchaser as set forth in the Purchase Agreement. In selecting each Successful Bid, the Seller will consider the Bid Assessment Criteria.

The Debtor will announce that the Auction is closed upon receipt of fully executed sale and transaction documents memorializing the terms of the Successful Bid from the Successful Bidder. Within one (1) business day after the conclusion of the Auction, the Successful Bidder shall supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Deposit equals ten  (10%) percent of the Successful Bid. The Debtor shall not consider any Bids submitted after the conclusion of the Auction.

(d) **Backup Bidder:** Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest and otherwise best Bid at the Auction with respect to the entire Business as determined by the Debtor, in the exercise of its business judgment will be designated as a backup bidder (a "**Backup Bidder**"). A Backup Bidder shall be required to keep its last submitted Bid (the "**Backup Bid**") open and irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, and (ii) closing of the Sale.

Following the Sale Hearing, if the Successful Bidder fails to consummate the purchase of the entire Business, the Debtor, may deem the Backup Bidder for such property to have the new Successful Bid, and the Debtor will be authorized, without further order of the Court, to consummate the transaction with such Backup Bidder at the price of its last bid. Such Backup Bidder will be deemed to be the Successful Bidder and the Debtor will be authorized, but not directed, to effectuate a sale to such Backup Bidder subject to the terms of the Backup Bid without further order of the Court. All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Debtor on and as of the date that the Court approves the Successful Bid. The Debtor, on its behalf and on behalf of each of its estate, specifically reserves the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Backup Bidder

designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

13.     Subject to the execution of an acceptable confidentiality agreement, the Debtor will permit potential parties to receive access to due diligence materials with respect to the sale of all or a portion of the Business and will assist them in connection with such efforts.

### iv.     Proposed Notices

14.     To ensure that all parties-in-interest receive adequate notice of the Sale, not later than three (3) days after the entry of the Bidding Procedures Order, the Debtor will cause the Bidding Procedures Order, the Bidding Procedures and the Auction Notice, substantially in the form attached to this Motion as Exhibit C, to be sent by first-class mail postage prepaid or, if no mailing address is available, via electronic mail, to (i) the U.S. Trustee, (ii) counsel for the Committee, if one is appointed, (iii) all known creditors of the Debtor, (iv) the Lenders, (v) all parties in interest who have requested notice pursuant to Bankruptcy Rule 2002, (vi) the Internal Revenue Service; (vii) Virginia Dept. of Tax Admin Personal Prop Tax & Business, (viii) all parties who are known to assert a lien, claim, encumbrance or other interest on any portion of the Business, and (ix) all parties identified by the Debtor as potentially having an interest in acquiring the Business (collectively, the "**Notice Parties**"). Accordingly, the Debtor submits that all parties in interest will have adequate notice of the Auction and Sale.

### v.     Request to Set Dates for the Auction and Bid Deadline

15.     As set forth below, the Debtor has formulated the following timeline to effectuate the Sale contemplated herein, and seek hearings and deadlines to be set as follows:

| | |
|---|---|
| May __, 2025, at the Bid Procedures Hearing | **Bid Procedures Objection:** Objections due to bid procedure |

| | |
|---|---|
| May __, 2025 | **Bid Procedures Hearing:** To be held at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY |
| June 17, 2025 at 5:00 p.m. EST | **Bid Deadline**: Due date to submit a Qualified Bid and Deposit (each as defined below) |
| June 23, 2025 at 10:00 a.m. EST | **Auction**: To be held at the offices of Cullen and Dykman LLP, One Battery Park Plaza, 34th Fl., New York, NY 10004 |
| June 25, 2025 at 4:00 p.m. EST | **Deadline to File Results of Auction** |
| Objections shall be filed so as to be received no later than 4:00 pm (EST) seven (7) days prior to the Sale Hearing. | **Sale Objection Deadline** |
| First available hearing date the week of June 30 or as soon thereafter as is convenient for the Court | **Sale Hearing**: To be held at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY |
| Third (3rd) business day following the satisfaction (or waiver by the Party that is entitled to the benefit thereof) of the conditions to Closing set forth in the Purchase Agreement. | **Sale Closing** |

The Debtor proposes that objections, if any: (i) to the Bidding Procedures shall be filed with this Court, so as to be received no later than 4:00 p.m. (prevailing Eastern Time) seven (7) days prior to the hearing to consider approval of the Bidding Procedures (the "**Bidding Objection Deadline**"), and (ii) to the Sale shall be filed with this Court, so as to be received no later than 4:00 p.m. (EST) seven (7) days prior to the Sale Hearing (the "**Sale Objection Deadline**"), provided any party that files a timely objection may supplement such objection not later than 2:00 p.m. (prevailing Eastern Time) one (1) day prior to the Sale Hearing to address matters determined at the Auction.

## <u>RELIEF REQUESTED</u>

16.     By this Motion, the Debtor requests the entry of certain orders: (a) approving the Bidding Procedures related to the Sale and proposed Auction of the Business pursuant to sections 363(b), (f), and (m) of the Bankruptcy Code; (b) approving the Purchase Agreement as a form to be followed by Potential Bidders; (c) scheduling an Auction, if necessary, and the Sale Hearing to approve the Sale of the Business; and (d) approving the form and manner of Auction Notice.

17.     The Debtor further requests that at the Sale Hearing, subject to the results of the Auction and the Bidding Procedures set forth herein, this Court enter the Sale Order approving and authorizing the Sale, free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon, pursuant to the Purchase Agreement, as modified to incorporate the terms of any Successful Bid.

## **BASIS FOR RELIEF REQUESTED**

### I.     **The Bidding Procedures Are Consistent and Appropriate in the Context of Bankruptcy Sales and Should be Approved**

18.     The Bidding Procedures, which are standard for the sale of assets in chapter 11 cases, will ensure that the Debtor's estate receives the greatest benefit available from the sale of the Business. The Bidding Procedures have been structured to attract the maximum number of Qualified Bids for the Business while allowing the Debtor the flexibility to select the bid that provide the greatest overall value to the Debtor's estate. Finally, the Bidding Procedures set out a time frame that will allow potential purchasers sufficient time to construct and submit informed Qualified Bids, while still providing for the expeditious sale of the Business, which is appropriate under the circumstances given the extensive pre-petition marketing efforts. Given the significant duration of pre-petition marketing efforts, the Debtor believes that the time frame proposed herein and in the Bidding Procedures is appropriate to facilitate the final round of interest without overly saturating the marketplace.

13

19.     Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets of the estate. *See, e.g.*, *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc.* (*In re Integrated Resources, Inc.*), 147 B.R, 650, 656-57 (Bankr. S.D.N.Y. 1992). The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See Four B. Corp. v. Food Barn Stores, Inc.* (*In re Food Barn Stores, Inc.*), 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 (same).

20.     In furtherance of maximizing the value of the assets sold, bidding procedures, such as those proposed here, may be used in court-supervised sales because they streamline the acquisition process and "help to provide an adequate basis by which to compare offers." *Integrated Res.*, 147 B.R. at 659 (bidding procedures and bid protections "are important tools to encourage bidding and to maximize the value of the debtor's assets"). In overseeing a sale subject to an auction process, a bankruptcy court must weigh "on the one hand, providing for an orderly bidding process, recognizing the danger that absent such a fixed and fair process bidders may decline to participate in the auction; and, on the other hand, retaining the liberty to respond to differing circumstances so as to obtain the greatest return for the bankrupt estate." *In re Fin. News Network, Inc.*, 980 F.2d 165, 166 (2d Cir. 1992).

21.     The Debtor submits that the Bidding Procedures are reasonably designed to ensure that the Debtor's estate receives the maximum benefit available from the sale of the Business, and therefore warrant Court approval.

## II.     The Sale of the Business Pursuant to the Purchase Agreement is Authorized by Section 363(b) of the Bankruptcy Code

22.     Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and

14

a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. §363(b)(l). The terms of such sale are generally within the sound discretion of the Debtor. *See In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 679 (Bankr. S.D.N.Y. 1989).

23.     Courts have uniformly held that approval of a proposed use of property pursuant to section 363(b) of the Bankruptcy Code is appropriate if a court finds that the transaction represents a reasonable business judgment on the part of the debtor. *See e.g., In re Chrysler LLC*, 405 B.R. 84, 97–100 (Bankr. S.D.N.Y. 2009), *aff'd*, 576 F.3d 108 (2d Cir. 2009); *In re General Motors Corp.*, 407 B.R. 463 (S.D.N.Y. 2009); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *Ionosphere Clubs, Inc.*, 100 B.R. at 675. Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *Integrated Resources, Inc.*, 147 B.R. at 656 (quoting *Smith v. Van Gorkam*, 488 A.2d 858, 872 (Del. 1985)).

24.     Furthermore, courts have authorized chapter 11 debtors, in some circumstances, to sell all or substantially all of their assets pursuant to section 363(b) prior to confirmation of a plan. *Lionel Corp.*, 722 F.2d at 1065, 1071. However, in approving such a sale, a court must be able, based on the evidence, "to articulate sound business justifications for [its] decisions." *Lionel Corp.*, 722 F.2d at 1066. A court should consider all of the salient factors and act to further the diverse interests of the debtors, creditors and equity holders alike. *Id.* at 1071; *see also In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Ionosphere Clubs, Inc.*, 100 B.R. at 675.

25.     The Second Circuit has indicated that the following factors should be considered during the sale approval process: (i) the proportionate value of the asset to the estate as a whole;

(ii) the amount of elapsed time since the filing; (iii) the likelihood that a plan of reorganization will be proposed and confirmed in the near future; (iv) the effect of the proposed disposition on future plans of reorganization; (v) the proceeds to be obtained from the disposition vis-à-vis any appraisals of the property; (vi) which of the alternatives of use, sale or lease the proposal envisions; and (vii) whether the asset is increasing or decreasing in value. *See Lionel Corp.*, 722 F.2d at 1071. The factors highlighted by the *Lionel* decision are often cited and applied by other courts when determining requests to approve a sale of all or substantially all of the assets of a debtor's estate. *See*, *e.g.*, *In re* GSC*, Inc.*, 453 B.R. 132, 156 (Bankr. S.D.N.Y. 2011); *In re Thomson McKinnon Sec., Inc*., 120 B.R. 301, 307-08 (Bankr. S.D.N.Y. 1990).

26.     As indicated above, the decision to sell the Business was one of necessity and resulted from a lack of sufficient funding to continue or other viable alternatives. Absent a negotiated sale of its Business to a third party in this chapter 11 case, the Debtor would likely be forced to sell the Business at a fire-sale without the opportunity for any reasonable and appropriate market test of value. As set forth above and supported by the First Day Declaration and the Debtor's Schedules and Statement of Financial Affairs, a liquidation of the Debtor's will provide far less value than a sale of the Business as a going concern. Further, a reasonably prompt marketing and sale of the Business is necessary because the Debtor has limited liquidity and is facing termination of its Lease under its terms in the near term. To date, the Landlord has been unwilling to extend the terms of the Lease. It is therefore critical that the Debtor expeditiously proceed towards a sale.

27.     Based on the foregoing, the Sale of the Business is justified by sound business reasons and in the best interests of the Debtor and its estate. Accordingly, pursuant to section 363(b) of the Bankruptcy Code, the Debtor requests approval of the Sale to the Successful Bidder

as set forth herein.

### III.   The Sale of the Business Free and Clear of Liens, Claims, and Interests is Authorized Under Section 363(f) of the Bankruptcy Code

28.     Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
> applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>       such entity consents;
>       such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>       such interest is in a bona fide dispute; or
>       such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

29.     As quoted above, section 363(f) of the Bankruptcy Code provides for the sale of assets "free and clear of any interests." Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Sale of the Business free and clear of all interests. *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 Bankr. LEXIS 436, at *12 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of §363(f) have been met."); *In re Bygaph, Inc.*, 56 B.R. 596, 606 n.8 (Bankr. S.D.N.Y. 1986) (same); *Mich. Employment Sec. Comm'n v. Wolverine Radio Co., Inc.* (*In re Wolverine Radio Co., Inc.*), 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) written in disjunctive; holding that court may approve sale "free and clear" provided at least one of subsections of Bankruptcy Code section 363(f) is met).

30.     In accordance with the provisions of the Purchase Agreement and section 363(f) of the Bankruptcy Code, the Debtor requests that it be authorized to conduct the Sale free and clear

of all liens, other than the Permitted Exceptions (as set forth in the Purchase Agreement). All parties holding liens on the Debtor's assets will be provided notice of the proposed Sale and shall be granted an opportunity to object to the relief requested in the instant Motion, and any such entity that does not object to the Sale shall be deemed to have consented. *See*, *e.g.*, *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) (standing for the proposition that the lack of an objection to a proposed sale of assets counts as consent); *Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *In re Elliot*, 94 B.R. 343, 345-46 (E.D. Pa. 1988) citing *In re Gabel*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985); *see also In re Enron Corp.*, No. 01-16034 (AJG), 2003 WL 21755006 at *2 (AJG) (Bankr. S.D.N.Y July 28, 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)).

31.    Thus, to the extent any parties holding a lien on the Business fail to object to the relief requested in this Motion, or otherwise consents, a Sale of the Business free and clear of all liens, with the exception of the Permitted Exceptions, satisfies section 363(f)(2) of the Bankruptcy Code.

**IV.    The Successful Bidder is a Good Faith Successful Bidder and is Entitled to the Full Protections of Section 363(m) of the Bankruptcy Code**

32.    Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

33.     The Second Circuit has indicated that a party would have to show fraud or collusion between the buyer and the debtor-in-possession or trustee or other bidders in order to demonstrate a lack of good faith. *See In re Colony Hill Assocs.,* 111 F.3d 269, 276 (2d Cir. 1997) ("Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders").

34.     The Debtor intends to make an appropriate showing at the Sale Hearing that the Purchase Agreement with the Successful Bidder is the result of a negotiated, arm's-length transaction, in which such Successful Bidder at all times acted in good faith. The Debtor thus requests that the Court find that the Successful Bidder will be purchasing the Business in good faith within the meaning of section 363(m) of the Bankruptcy Code.

## V.     The Sale Should Be Exempt from Transfer and Similar Taxes

35.     Section 1146 (c) of the Bankruptcy Code provides that "the making or delivery of an instrument of transfer under a Plan confirmed under section 1129 of this Title, may not be taxed under any law imposing a stamp tax or similar tax."  This language has been construed to include transfers pursuant to a sale outside of, but in furtherance of, effectuating a reorganization plan.  *In re Jacoby-Bender, Inc.*, 758 F.2d 840, 842 (2d Cir. 1985) (holding that Bankruptcy Code section 1146(c) applies when the "transfer is necessary to the consummation of a plan"); *In re United Press Int'l, Inc.*, Case No. 91-B-13955 (FSC), 1992 Bankr. LEXIS 842 at *4 (Bankr. S.D.N.Y., May 18, 1992) (Section 1146(c) exemption applied to section 363 sale where "value of Debtor's assets . . . likely to deteriorate [during] time necessary to . . . confirm a plan."; *City of New York v. Smoss Enters. Corp. (In re Smoss Enters. Corp.),* 54 B.R. 950, 951 (E.D.N.Y. 1985) (holding that 1146(c) applied when "the transfer of the property was essential to the confirmation of the plan");

CLIENTS\24079\1\21404247.v2-5/6/25

*see also In re Permar Provisions, Inc.*, 79 B.R. 530 (Bankr. E.D.N.Y. 1987) (concluding that even though execution and delivery of deed occurred more than one year prior to confirmation of the plan, the sale was "under a plan" and, thus, exempt from local taxes).

36.     Here, the Sale is integral to the Plan and the consideration to ultimately be received by the Debtor from the sale of the Business will be used to fund the Debtor's Plan. The proposed Sale is necessary to fund the Debtor's Plan and distributions to creditors pursuant to the Plan and thus falls within the exception for transfer taxes under section 1146(c) of the Bankruptcy Code. Accordingly, the Debtor requests that the Sale Order include a provision exempting the Debtor's estate from any stamp, transfer or similar taxes under section 1146(c) of the Bankruptcy Code, provided that the Plan is confirmed.

## VI.     The Proposed Notice Procedures With Respect to the Auction and Sale Hearing Should be Approved

37.     Pursuant to Bankruptcy Rules 2002(c) and 6004, the Debtor is required to give 21 days' notice of any proposed sale of property not in the ordinary course of business. Bankruptcy Rule 2002(c) further provides that such notice must include the time and place of any auction, a sale hearing, and the time fixed for objections to the sale. The Auction Notice sets forth all the information a Potential Bidder and any other party in interest should require about the bidding process for the Business, including notice of the Bidding Procedures and information on how to obtain a copy of the Bidding Procedures; the Bid Deadline, the time, date, and location of the Auction, and the time, date and location of the Sale Hearing.

38.     Not later than three (3) days after the entry of the Bidding Procedures Order, the Debtor will cause the Bidding Procedures Order, the Bidding Procedures and the Auction Notice, to be sent by first-class mail postage prepaid to the Notice Parties. The Debtor submits that the foregoing notice is reasonably calculated to provide timely and adequate notice to the Debtor's

creditors and those persons potentially interested in bidding on the Business and, thus, that such notice is sufficient for entry of the Bidding Procedures Order and the Sale Order.

## NO PRIOR REQUEST

39.    No prior request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

40.    The Debtor's proposed Sale of the Business as described in this Motion and the Purchase Agreement is supported by sound business reasons, as set forth herein. The proposed Sale is proper and necessary, and serves the best interests of the Debtor, its estate, and its creditors. The Debtor thus requests that the Court approve the proposed Sale of the Business free and clear of all liens, claims, encumbrances, and interests, as requested.

## NOTICE

41.    Notice of this Motion has been provided to the Notice Parties. The Debtor submits that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and grant the Debtor such other and further relief as this Court deems just and proper.

Dated: May 6, 2025

By: /s/ *Kyriaki Christodoulou*
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Floor
Uniondale, NY 11553
(516) 357-3700
Email: rpreite@cullenllp.com

Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Fl.
New York, New York 10004
(212) 510-2296
Email: mmcmahon@cullenllp.com
          kchristodoulou@cullenllp.com
*Proposed Attorneys to Sysorex Government Services, Inc.*

**Exhibit A**

**Bidding Procedures Order**

**CULLEN AND DYKMAN LLP**
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Fl.
Uniondale, NY 11553
(516) 357-3700
Email: rpreite@cullenllp.com

Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Fl.
New York, New York 10004
(212) 510-2296
Email: mmcmahon@cullenllp.com
          kchristodoulou@cullenllp.com

*Proposed Attorneys to Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SYSOREX GOVERNMENT SERVICES, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10920 (JPM) |

**AMENDED ORDER (I) (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF THE DEBTOR'S BUSINESS; (B) APPROVING THE FORM OF PURCHASE AGREEMENT; (C) APPROVING THE FORM AND MANNER OF SERVICE OF AUCTION NOTICE; AND (D) SCHEDULING AN AUCTION; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[1] filed by Sysorex Government Services, Inc., debtor and debtor-in-possession (the "**Debtor**" or "**SGS**") in the above-captioned case (the "**Case**"), by and through its proposed counsel Cullen and Dykman LLP, for entry of an order (this "**Bidding Procedures Order**"), pursuant to sections 105, 363, 365, and 503 of chapter 11 of title 11 of the

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

United States Code 11 U.S.C. §§101-1532, et seq. (the "**Bankruptcy Code**"), and Rules 2002,

6004, 9006 and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**")

(a) approving bidding procedures ("**Bidding Procedures**"), substantially in the form annexed

hereto as Exhibit 1, related to the sale and proposed auction of the Debtor's business (the

"**Business**") pursuant to sections 363(b), (d) (f), and (m) of the Bankruptcy Code; (b) approving

the proposed asset purchase agreement (the "**Purchase Agreement**"), a copy of which is

annexed to the Motion as Exhibit B, solely to the extent of its use as a form which all bidders for

the Business must follow; (c) approving the form and manner of notice (the "**Auction Notice**")

of the auction (the "**Auction**") and sale hearing (the "**Sale Hearing**") substantially in the form

annexed to the Motion as Exhibit C; and due and sufficient notice of the hearing on the Motion

(the "**Bidding Procedures Hearing**") and the relief sought therein having been given under the

particular circumstances; and upon the declaration of Zaman Khan in support of the Motion; and

it appearing that no other or further notice need be provided; and it appearing that the relief

requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other

parties in interest; and after due deliberation thereon and good cause appearing therefore, it is

hereby: FOUND, CONCLUDED AND DETERMINED THAT:

    A.    This Court has jurisdiction over the Motion and the relief requested therein

pursuant to 28 U.S.C. §§157 and 1334. Consideration of the Motion and the relief requested

therein is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court

pursuant to 28 U.S.C. §§1408 and 1409.

    B.    The relief granted herein is in the best interests of the Debtor, its estate and

creditors, and other parties in interest.

    C.    Due, sufficient and adequate notice of the Motion and the Bidding Procedures

Hearing and the relief granted in this Bidding Procedures Order has been given in accordance

with applicable law and orders of this Court and such notice is appropriate in light of the

circumstances and the nature of the relief requested, and no other or further notice thereof is

required.

D.     The proposed Auction Notice is reasonably calculated to provide timely and

adequate notice to the Debtor's creditors and those persons potentially interested in bidding on

the Business, and no further notice is necessary or required upon service of the Auction Notice

by first- class mail postage prepaid or, if no mailing address is available, via electronic mail,

upon (i) the U.S. Trustee, (ii) counsel for the Committee, if one is appointed, (iii) all known

creditors of the Debtor, (iv) all parties in interest who have requested notice pursuant to

Bankruptcy Rule 2002; (v) the following taxing and regulatory authorities: (a) the United States

Attorney for the Southern District of New York, (b) the Internal Revenue Service, and (c)

Virginia Dept. of Tax Admin Personal Prop Tax & Business; (vi) all parties who are known to

assert a lien, claim, encumbrance or other interest on any portion of the Business; and (vii) all

parties identified by the Debtor as potentially having an interest in acquiring the Business

(collectively, the "**Notice Parties**").

E.     The Debtor has articulated good and sufficient reasons for this Court to grant the

relief requested in the Motion, including this Court's (i) approval of the Bidding Procedures,

attached hereto as Exhibit 1, (ii) approval of the form of Purchase Agreement, and (iii) approval

of the form and manner of service of the Auction Notice.

F.     The Debtor has articulated good and sufficient reasons for, and the best interests

of the Debtor's estate will be served by, this Court scheduling a Sale Hearing to consider whether

to grant the remainder of the relief requested in the Motion, including approving and authorizing

the proposed Sale of the Business, free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon, pursuant to the Purchase Agreement, as modified to incorporate the terms of any Successful Bid.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.   The Motion is GRANTED, to the extent set forth herein.

2.   All objections to entry of this Bidding Procedures Order or to the relief provided herein and requested in the Motion that have been withdrawn, waived, resolved, or settled are hereby denied and overruled in their entirety.

**The Bidding Procedures**

3.   The Bidding Procedures, as set forth in Exhibit 1 hereto and incorporated herein by reference, are hereby APPROVED in all respects and shall govern all bids and bid proceedings relating to the Business, and the Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.  The failure to specifically include or reference any particular provision of the Bidding Procedures in this Bidding Procedures Order shall not diminish or impair the effectiveness of such procedures, it being the intent of this Court that the Bidding Procedures be authorized and approved in their entirety.

4.   As further described in the Bidding Procedures, each Bid must be delivered on or before June 17, 2025 at 5:00 p.m. (EST) (the **"Bid Deadline"**).

5.   The Debtor is authorized to extend the deadlines set forth in this Bidding Procedures Order and/or adjourn, continue or suspend the Auction and/or the Sale Hearing as it may reasonable determine to be in the best interest of its estate.

**The Auction**

6.    The Auction, if necessary, shall commence at 10:00 a.m. (prevailing Eastern Time) June 23, 2025 at the offices of Cullen and Dykman LLP, One Battery Park Plaza, 34th Fl., New York, New York 10004, or such other place and time as the Debtor shall notify all Qualified Bidders; provided, however, in the event that no Qualified Bids are received by the Bid Deadline, then the Auction shall be cancelled, and in such event the Debtor may proceed with the approval of the Purchase Agreement with the sole Qualified Bidder.

**Auction Notice**

7.    The Auction Notice substantially in the form attached to the Motion as Exhibit C is hereby approved.

8.    Not later than three (3) days after the entry of this Bidding Procedures Order, the Debtor will cause a copy of this Bidding Procedures Order, the Bidding Procedures and the Auction Notice, to be sent by first-class mail postage prepaid to the Notice Parties.

**Notice of the Auction Results**

9.    Not later June 25, 2025, the Debtor will serve Notice of the results of the Auction, including the identity of the Successful Bidder and the Backup Bidder, to be sent by first-class mail postage prepaid to the Notice Parties.

**Objections to Motion**

10.    Objections, if any, to the Motion must be made in writing, must state with particularity the reasons for the objection or response, and must be filed with the Clerk of the Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers of the Honorable John P. Mastando III, United States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York, One Bowling Green,

Courtroom 501, New York, New York 10004, must conform to the Bankruptcy Rules and the

Local Rules of the Bankruptcy Court, must set forth the name of the objecting party, the

nature and basis of the objection and the specific grounds therefore and must be served upon:

(a) United States Trustee for Southern District New York, One Bowling Green, Room 534,

New York, New York 10004; (b) counsel to the Debtor, Cullen and Dykman LLP, One

Battery Park Plaza, 34th Fl., New York, New York 10004, Attn: Michelle McMahon, Esq.

and Kyriaki Christodoulou, Esq.; (c) counsel to the Committee, if one is appointed; and (d)

counsel to any other party that has filed a notice of appearance and request for service of

papers in this Case, so as to be received no later than 4:00 p.m. (prevailing Eastern Time)

seven (7) days prior to the Sale Hearing (the "**Sale Objection Deadline**").

### The Sale Hearing

11.     The Sale Hearing shall be held before the Honorable John P. Mastando III, United

States Bankruptcy Judge, on _____, 2025 at __:00a/p.m. (EST) at the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Courtroom 501,

New York, New York, 10004, at which time this Court shall consider (i) approval of the Sale of

the Business to a Successful Bidder; (ii) the entry of the proposed Sale Order, substantially in the

form attached to the Motion as Exhibit D; (iii) any issues or objections that are timely interposed

by any parties; and (iv) such other or further relief as this Court may deem just or proper.

12.     The Sale Hearing may be adjourned by the Court upon request of the Debtor and

the Successful Bidder, without further order of this Court, in which event a notice of

adjournment will be filed with this Court and served on all Qualified Bidders or by announcing

such adjournment on the record of the Sale Hearing.

**Additional Provisions**

13.    The Debtor is authorized and empowered to take such steps, incur and pay such costs and expenses, and do such things as may be reasonably necessary to fulfill the requirements established by this Bidding Procedures Order.

14.    Nothing contained in this Bidding Procedures Order precludes any party in interest from objecting to the Sale in accordance with the objection procedures set forth herein and no party shall be deemed to have consented to the Sale by virtue of not having objected to the Motion.

15.    The Debtor is hereby authorized and empowered to take such actions as may be reasonably necessary to implement and effect the terms and requirements established by this Bidding Procedures Order.

16.    This Bidding Procedures Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

17.    Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 7052, 9014 or otherwise, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

18.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order.

Dated: _____, 2025
    New York, New York

_____
THE HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

**Bidding Procedures**

## <u>AMENDED BIDDING PROCEDURES AND TERMS AND CONDITIONS OF SALE</u>

These bidding procedures (the "**Bidding Procedures**") set forth the process by which Sysorex Government Services, Inc., the debtor and debtor-in-possession herein (the "**Debtor**" or the "**Seller**") shall conduct a sale (the "**Sale**") by auction (the "**Auction**") of the Debtor's business (the "**Business**"), free and clear of liens, claims and encumbrances.

On [●], 2025, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") authorized the Seller to determine the highest and otherwise best offer(s) for the Business through the process and procedures set forth below.

The Court presides over the Seller's chapter 11 bankruptcy case (the "**Chapter 11 Case**") captioned *In re Sysorex Government Services, Inc.,* Ch. 11 Case No. 25-10920- (JPM).

On May __, 2025, the Court entered an order (the "**Bidding Procedures Order**") granting the Seller's motion (the "**Bidding Procedures Motion**")[1] insofar as it sought approval of the Bidding Procedures.  The Bidding Procedures Order and the order approving the Sale are referred to herein, collectively, as the "**Sale Orders**."

## I.      PROPERTY TO BE SOLD

The Bidding Procedures Motion contemplates a sale of the Business.  A party may participate in the bidding process by submitting a Bid (as defined below) pursuant to the terms of these Bidding Procedures.

Subject to the terms of the Sale Orders all of the Seller's right, title and interest in and to the Business shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Liens**"), with such Liens to attach to the proceeds of the Sale(s) with the same validity and priority as such Liens applied against the Business, except as otherwise specifically provided in an Asset Purchase Agreement (as defined below) submitted by a Successful Bidder (as defined below) (including any exhibits or schedules thereto) and reflected in the Sale Orders.

## II.     BIDDING PROCESS

A.      <u>Overview</u>

The Seller and its advisors will, subject to the other provisions of these Bidding Procedures:

1.      coordinate the efforts of Potential Bidders (as defined below) in conducting their due diligence investigations;

2.      receive offers from Bidders (as defined below);

3.      determine whether any person is a Qualified Bidder (as defined below); and

---

[1]  Capitalized terms used but not defined herein have the meaning ascribed to them in the Bidding Procedures Motion.

    4.    conduct the Auction and further negotiate any offers made to purchase the Business.

B.    <u>Key Dates</u>

The Bidding Procedures provide interested parties with the opportunity to qualify for and participate in the Auction to be conducted by the Seller and to submit competing bids for the Business.  The Seller will assist Potential Bidders in conducting their respective due diligence investigations and may accept Bids until **June 17, 2025 at 5:00 p.m. (EST)** (the "**Bid Deadline**").

The key dates for the Sale process are as follows:[2]

| | |
|---|---|
| June 17, 2025 at 5:00 p.m. EST | **<u>Bid Deadline</u>**:  Due date to submit a Qualified Bid and Deposit (each as defined below) |
| June 23, 2025 at 10:00 a.m. EST | **<u>Auction</u>**:  To be held at the offices of Cullen and Dykman LLP, One Battery Park Plaza, 34th Fl., New York, NY 10004 |
| June 25, 2025 at 4:00 p.m. EST | **<u>Deadline to File Results of Auction</u>** |
| Objections shall be filed so as to be received no later than 4:00 pm (EST) seven (7) days prior to the Sale Hearing. | **<u>Sale Objection Deadline</u>** |
| First available hearing date the week of June 30 or as soon thereafter as is convenient for the Court | **<u>Sale Hearing</u>**:  To be held at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY |

C.    <u>Access to Diligence Materials</u>

To participate in the bidding process to effectuate a sale transaction for the Business (a "**Transaction**") and to receive access to due diligence materials (the "**Diligence Materials**"), a party must submit to the Seller an executed confidentiality agreement in substantially the same form as that which was previously circulated to Prospective Purchasers, and otherwise in form and substance satisfactory to the Seller (a "**Confidentiality Agreement**").

A party who executes such a Confidentiality Agreement for access to Diligence Materials shall be a "**Potential Bidder**."  The Seller will afford any Potential Bidder the time and opportunity

---

[2]These dates are subject to extension or adjournment as provided for herein.  The schedule set forth above may be delayed and the qualification of bids may be relaxed in the event that the Seller determines that additional time or adjustment to qualifications will likely result in greater overall value for the Seller's estate based on an expression(s) of interest or bid(s) received from an identified party which the Seller believes could be a Qualified Bid (as hereinafter defined).

2

to conduct reasonable due diligence in accordance with a diligence protocol determined by the Seller and its advisors; provided, however, that the Seller shall not be obligated to furnish any due diligence information after the Bid Deadline to any party that has not submitted a Qualified Bid (as defined below) on or before the Bid Deadline and may limit the amount of further due diligence available to Qualified Bidders after the Bid Deadline.

Neither the Seller nor its representatives shall be obligated to furnish information of any kind whatsoever to any person that is not determined to be a Potential Bidder.

All due diligence requests must be directed to the Seller's advisors, Jameson Capital, LLC, Attn: Timothy Orr, 1522 East Sweet Citrus Dr., Queen Creek, AZ 85140, timorr@protonmail.com and counsel to the Debtor, Cullen and Dykman LLP, One Battery Park Plaza, 34th Fl., New York, New York 10004, Attn: Kyriaki Christodoulou, Esq.

D.   Due Diligence from Bidders

Each Potential Bidder and each Bidder shall comply with all reasonable requests for additional information and due diligence access by the Seller or its advisors regarding such Potential Bidder or Bidder, as applicable, and its contemplated Transaction. Failure by a Potential Bidder or Bidder to comply with requests for additional information and due diligence access may be a basis for the Seller to determine that such Bidder is not a Qualified Bidder.

## III.   AUCTION QUALIFICATION PROCESS

A.   Qualifying Bids

To be eligible to participate in the Auction, each offer, solicitation or proposal (each, a "**Bid**"), and each party submitting such a Bid (each, a "**Bidder**"), must be reasonably determined by the Seller to satisfy each of the following conditions:

1.   Deposit: Each Bid must be accompanied by a cash deposit, paid by wire transfer of immediately available funds or a certified check, in the amount of ten percent (10%) of the purchase price contained in the Asset Purchase Agreement (as defined below), which deposit shall be held in an escrow account to be established by the Seller (the "**Deposit**").

2.   Executed Agreement: Each Bid must include a binding, executed, irrevocable asset purchase agreement (an "**Asset Purchase Agreement**"), signed by an authorized representative of such Bidder, pursuant to which the Bidder proposes to effectuate a Transaction. A Bid must also include a copy of the Asset Purchase Agreement (including all exhibits thereto) marked against the form of Asset Purchase Agreement to show all changes requested by the Bidder. Both the Asset Purchase Agreement and the marked copy thereof must be provided in both Microsoft Word and PDF format.

3.   Scope of Bid: A Bid must be for the entire Business.

**Error! Unknown document property name.**
CLIENTS\24079\1\21424796.v2-5/6/25

4.      Minimum Bid:  $2 million.

5.      Corporate Authority:  A Bid must include written evidence reasonably acceptable to the Seller demonstrating appropriate corporate authorization to consummate the proposed Transaction; provided that, if the Bidder is an entity specially formed for the purpose of effectuating the Transaction then the Bidder must furnish written evidence reasonably acceptable to the Seller of the approval of the Transaction by the equity holder(s) of such Bidder.

6.      Disclosure of Identity of Bidder:  A Bid must fully disclose the identity of each entity and principal that will be bidding for or purchasing the Business, including any equity holders in the case of a Bidder which is an entity specially formed for the purpose of effectuating the contemplated Transaction, or otherwise participating in connection with such Bid, and the complete terms of any such participation.  A Bid must also fully disclose any connections or agreements with the Seller, or any other known, potential, prospective Bidder or Qualified Bidder, and/or any officer or trustee of the Seller.

7.      Proof of Financial Ability to Perform:  A Bid must include detailed, written evidence that the Seller and its advisors may conclude demonstrates that the Bidder has and will continue to have the necessary financial ability to close the Transaction. Such information must include, *inter alia,* the following:

   (a)     contact names and numbers for verification of financing sources;

   (b)     evidence of the Bidder's internal resources and proof of funding commitments in an aggregate amount equal to the cash portion of such Bid as are needed to close the Transaction;

   (c)     the Bidder's current financial statements (audited if they exist) or other similar financial information reasonably acceptable to the Seller;

   (d)     a description of the Bidder's pro forma capital structure; and

   (e)     any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller demonstrating that such Bidder has the ability to close the Transaction.

8.      Contact Information and Affiliates:  A Bid must provide the identity and contact information for the Bidder and full disclosure of any affiliates of the Bidder.

9.     <u>Contingencies</u>:    Each Bid (a) may not contain representations and warranties, covenants, or termination rights of any kind and (b) may not be conditioned on (i) obtaining financing, (ii) any internal approvals or credit committee approvals, or (iii) the outcome or review of due diligence.

10.    <u>Irrevocable</u>:  Each Bid must be irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, (ii) closing of the Sale with the Successful Bidder, or (iii) the date the Bid is otherwise rejected under these Bidding Procedures.

11.    <u>Compliance with Diligence Requests</u>:  The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Seller to the reasonable satisfaction of the Seller.

12.    <u>As-Is, Where-Is</u>:  Each Bid must include a written acknowledgement and representation that the Bidder:  (i) has had an opportunity to conduct any and all due diligence regarding the Business prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Business in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding Business or the completeness of any information provided in connection therewith or the Auction.

13.    <u>Termination Fees</u>:  The Bid must not entitle the Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment or reimbursement and, by submitting the Bid, the Bidder waives the right to pursue a substantial contribution claim under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

14.    <u>Adherence to Bid Procedures</u>:   By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

15.    <u>No Late Bids</u>:  Unless otherwise ordered by the Court, the Seller shall not consider any Bids submitted after the conclusion of the Auction, and any and all such bids shall be deemed untimely and shall under no circumstances constitute a Qualified Bid.

16.    <u>Additional Information</u>: The Debtor reserves the right to request additional information from a Bidder in connection with its Bid.

17.    <u>Bid Notice</u>:  The following parties (the "**Bid Notice Parties**") must receive a Bid in writing, on or before the Bid Deadline:

| Debtor | Counsel to the Debtor |
|---|---|
| Sysorex Government Services, Inc.<br>13880 Dulles Corner Lane, Suite 120<br>Herndon, VA  20171<br>Attn: Zaman Khan<br>zaman.khan@sysorexinc.com | Cullen and Dykman LLP<br>333 Earle Ovington Blvd.<br>Uniondale, NY  11553<br>Attn: Ralph Preite, Esq.<br>rpreite@cullenllp.com<br>and<br>Battery Park Plaza.<br>New York, NY  10004<br>Attn: Michelle McMahon, Esq.<br>Kyriaki Christodoulou, Esq.<br>mmcmahon@cullenllp.com<br>kchristodoulou@cullenllp.com |
| **Office of the United States Trustee** | **Proposed Real Estate Advisor to the Debtor** |
| United States Trustee for Region 2<br>Southern District of New York<br>Alexander Hamilton Custom House<br>One Bowling Green, Room 534<br>New York, NY 10004-1408<br>212-510-0500<br>Att:_____ | Jameson Capital, LLC<br>Timothy Orr<br>1522 East Sweet Citrus Dr.<br>Queen Creek, AZ 85140<br>timorr@protonmail.com |

A Bid received from a Bidder before the Bid Deadline that meets all of the above requirements for the Business shall constitute a "**Qualified Bid**" and such Bidder shall constitute a "**Qualified Bidder**"; provided that if the Seller receives a Bid prior to the Bid Deadline that is not a Qualified Bid, the Seller may provide the Bidder with the opportunity to remedy any deficiencies prior to the Auction; provided, further, that, for the avoidance of doubt, if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Seller to its satisfaction, the Seller may disqualify any Qualified Bidder and Qualified Bid, in the Seller's discretion, and such Bidder shall not be entitled to attend or participate in the Auction.

Any amendments, supplements or other modifications to any Bids (including pursuant to this paragraph) shall be delivered to the Bid Notice Parties. All Qualified Bids will be considered, but the Seller reserves the right to reject any or all Bids.  However, Bids that are unconditional and contemplate sales that may be consummated on or soon after the Sale Hearing are preferred. The Seller will inform any Qualified Bidders whether the Seller considers its Bid to be a Qualified Bid as soon as practicable but in no event later than one (1) day before the Auction.

Each Qualified Bidder, by submitting a Bid, shall be deemed to acknowledge and agree that it is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by

any person or party, including the Seller and its agents and representatives (other than as may be set forth in a definitive agreement executed by the Seller), regarding the Seller, the Business, the Auction, these Bidding Procedures or any information provided in connection therewith.

Without the consent of the Seller a Qualified Bidder may not amend, modify or withdraw its Bid, except for proposed amendments to increase the amount or otherwise improve the terms of the Bid, during the period that such Bid is required to remain irrevocable and binding.

## IV.   AUCTION

### A.   Auction

If multiple Qualified Bids with respect to the Business are submitted by the Bid Deadline, the Seller will conduct the Auction to determine the highest and otherwise best Qualified Bid.

### B.   Assessment Criteria

The Seller's determination of the highest and otherwise best Qualified Bid with respect to the Business will take into account any factors the Seller reasonably deems relevant to the value of the Qualified Bid to the estate and may include, but are not limited to, the following:

1.   the amount and nature of the consideration;

2.   the type and nature of any modifications to the Asset Purchase Agreement requested by each Bidder in such Bidder's Asset Purchase Agreement;

3.   the extent to which such modifications are likely to delay closing of the Sale and the cost to the Seller of such modifications or delay;

4.   the likelihood of the Bidder's ability to close a Transaction and the timing thereof, including the ability to obtain, or waive, as applicable, government, regulatory and Court approvals;

5.   compliance with section 541(f) of the Bankruptcy Code;

6.   the net benefit to the Seller's estate (collectively, the "**Bid Assessment Criteria**").

### C.   Cancellation of the Auction

If multiple Qualified Bids for the Business have not been timely received, then the Auction will be cancelled. If only one Qualified Bid is received then it will be the Successful Bid and the Bidder submitting such Qualified Bid be the Successful Bidder.

## V.   PROCEDURES FOR THE AUCTION

If multiple Qualified Bids for the Business have been timely received by the Bid Deadline, then the Seller may commence the Auction on **June 23, 2025 at 10:00 a.m.** (prevailing Eastern

7

Time) at the offices of Cullen and Dykman LLP, One Battery Park Plaza, 34th Fl., New York 10004, or such other place and time as the Seller shall notify all Qualified Bidders.

The Auction will be conducted according to the following procedures:

A.    Participation

Only the Seller and any other Qualified Bidder, in each case, along with their respective representatives and counsel, may attend the Auction (such attendance to be in person) and only the Qualified Bidders will be entitled to make any Bids at the Auction.

B.    The Seller Shall Conduct the Auction

The Seller and its advisors shall direct and preside over the Auction, and the Auction shall be transcribed.  The Seller may conduct the Auction and may augment or modify the procedures described herein in any manner it reasonably determines will result in the highest and otherwise best Qualified Bid(s), including, without limitation, by establishing rules at any Auction that include, without limitation, a single or multiple rounds of bidding, the use of sealed bidding, open outcry, or any other form of Bid submission. Any rules developed by the Seller will provide that each Qualified Bidder will be permitted what the Seller determines to be an appropriate amount of time to respond to the previous bid at the Auction.

C.    Auction Baseline Bids

Prior to commencement of the Auction, the Seller may provide each Qualified Bidder participating in the Auction with a copy of the Asset Purchase Agreement(s) that is the highest and otherwise best Qualified Bid (the "**Auction Baseline Bid**").  In addition, at the start of the Auction, the Seller may describe the terms of the Auction Baseline Bid.

D.    Anti-Collusion Representations

Each Qualified Bidder participating in the Auction must confirm that it (1) has not engaged in any collusion with respect to the bidding or Sale, (2) has reviewed, understands and accepts the Bidding Procedures and (3) has consented to the core jurisdiction of the Court.

E.    Terms of Overbids

The Seller will accept Overbids, as further described below.  An "**Overbid**" is any bid made at the Auction subsequent to the Seller's announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

1.    Initial Overbid:  The initial Overbid after and above the Auction Baseline Bid (the "**Initial Overbid**") shall be in an amount of 105% of the Auction Baseline Bid.

2.    Minimum Overbid Increments:  Any Overbid after and above the Initial Overbid shall be made in increments of $100,000, in cash or in cash

8

equivalents (the "**Minimum Overbid Increment**"). The Debtor reserves the right to modify the Minimum Overbid Increment during the Auction.

3. <u>Remaining Terms Are the Same as for Qualified Bids</u>:  Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above, provided, however, that the Bid Deadline shall not apply. Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Purchase Agreement. Any Overbid must remain open and binding on the Bidder as provided herein.

At the Seller's discretion, to the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Seller), reasonably demonstrating such Bidder's ability to close the Transaction proposed by such Overbid.

F. <u>Other Procedures</u>

1. <u>Jurisdiction of the Court</u>:  All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the marketing process, the determination of what constitutes a Qualified Bid and the procedures used to make that determination, the Auction, and the construction and enforcement of the Qualified Bidder's fully executed sale and Transaction documents, as applicable.

2. <u>Additional Bids; Modifications</u>:  All Qualified Bidders shall have the right to submit additional Bids and make additional modifications to the Asset Purchase Agreement at the Auction, as applicable, provided that any such modifications on an aggregate basis and viewed in whole, shall not, in the Seller's business judgment be less favorable to the Seller than the terms of such original agreement.

3. <u>Subsequent Bids</u>:  Each Qualified Bidder must submit a subsequent Bid that satisfies the Minimum Overbid Increment in each round of bidding in order to continue participating in the Auction.  Unless approved by the Seller Qualified Bidders shall not be allowed to skip rounds of bidding for the Business once they participate in the Auction.

4. <u>Continuance/Adjournment of Auction</u>:  Subject to the deadlines set forth herein, the Seller reserves the right, in its reasonable business judgment to make one or more continuances of the Auction to, among other things: facilitate discussions between the Seller and individual Qualified Bidders, allow individual Qualified Bidders to consider how they wish to proceed, modify or supplement any or all of the Auction procedures or rules, or give Qualified Bidders the opportunity to provide the Seller with such additional

**Error! Unknown document property name.**
CLIENTS\24079\1\21424796.v2-5/6/25

evidence as the Seller, in its reasonable business judgment that the Qualified Bidder has sufficient internal resources, or has received sufficient funding commitments, to consummate the proposed Transaction at the prevailing Overbid amount.

G.    Additional Procedures

The Seller may announce at the Auction other or additional procedural rules for conducting the Auction or may modify the rules specified in these Bidding Procedures in any manner the Seller reasonably determines will result in the highest and otherwise best Qualified Bid(s).

H.    Sale Is As Is/Where Is

Except as otherwise may be provided in any Asset Purchase Agreement, or any order by the Court approving any Sale as contemplated hereunder, the property sold pursuant to the Bidding Procedures shall be conveyed at the closing of the purchase and sale in its then-present condition, "**AS IS, WHERE IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED.**"

I.    Closing the Auction

The Auction will continue until the Seller selects the Bid that represents the highest and otherwise best offer (the "**Successful Bid**," and the Bidder submitting such Successful Bid, a "**Successful Bidder**"). The Successful Bidder shall have the rights and responsibilities of the purchaser as set forth in the Asset Purchase Agreement. In selecting the Successful Bid, the Seller will consider the Bid Assessment Criteria.

The Seller will announce that the Auction is closed upon receipt of fully executed sale and Transaction documents memorializing the terms of the Successful Bid from the Successful Bidder. Unless otherwise agreed to by the Seller, within one (1) business day after the conclusion of the Auction, the Successful Bidder shall supplement its Deposit by wire transfer or other immediately available funds so that, to the extent necessary, such Deposit equals ten (10%) percent of the Successful Bid.

The Seller shall not consider any Bids submitted after the conclusion of the Auction.

J.    Backup Bidder

Notwithstanding anything in the Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next highest and otherwise best Bid at the Auction as determined by the Seller, in the exercise of its business judgment will be designated as a backup bidder (the "**Backup Bidder**"). The Backup Bidder shall be required to keep its last submitted Bid (the "**Backup Bid**") open and irrevocable until the earlier of (i) ninety (90) days following entry of the final Sale Order, and (ii) closing of the Sale.

Following the Sale Hearing, if the Successful Bidder fails to consummate the purchase of the Business, the Seller may deem the Backup Bidder to have the new Successful Bid, and the Seller will be authorized, without further order of the Court, to consummate the Transaction with

Error! Unknown document property name.
CLIENTS\24079\1\21424796.v2-5/6/25

such Backup Bidder at the price of its last bid. The Backup Bidder will be deemed to be the Successful Bidder and the Seller will be authorized, but not directed, to effectuate a sale to such Backup Bidder subject to the terms of the Backup Bid without further order of the Court. All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Seller on and as of the date that the Court approves the Successful Bid. The Seller, on its behalf and on behalf of each of its estate, specifically reserves the right to seek all available damages, including specific performance, from the defaulting Successful Bidder (including the Backup Bidder designated as a Successful Bidder) in accordance with the terms of the Bidding Procedures.

## VI.    SALE HEARING

The Successful Bid and Backup Bid will be subject to approval by the Court. The sale hearing to approve the Successful Bids and any Backup Bids shall take place on _____, **2025** at __:00 __.m. (EST) before the Court (the "**Sale Hearing**"). The Sale Hearing may be adjourned by the Seller, in consultation with the Successful Bidder.

## VII.   RETURN OF DEPOSITS

The Deposits of all Qualified Bidders shall be held in one or more escrow accounts established by the Seller but shall not become property of the Seller's estate absent further order of the Court or as expressly provided below. The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after entry of the Sale Order. The Deposit of a Backup Bidder, if any, shall be returned to such Backup Bidder no later than five (5) business days after the closing of the Transaction with the Successful Bidder or as otherwise provided in these Bidding Procedures. If the Successful Bidder (or Backup Bidder, if applicable) timely closes on the winning Transaction, its Deposit shall be credited towards the applicable purchase price. If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a Transaction because of a breach or failure to perform on the part of such Successful Bidder (or Backup Bidder, if applicable), the Successful Bidder (or Backup Bidder, if applicable), shall forfeit the Deposit as liquidated damages, Seller will not have any obligation to return the Deposit deposited by such Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Seller.

## VIII.  CONSENT TO JURISDICTION AND AUTHORITY AS CONDITION TO BIDDING

All Potential Bidders shall be deemed to have (A) consented to the core jurisdiction of the Bankruptcy Court to enter any order or orders, which shall be binding in all respects, in any way related to the Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale Transaction, (B) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or the construction and enforcement of any agreement or any other document relating to the sale Transaction, and (C) consented to the entry of a final order or judgment in any way related to the Bidding Procedures, an Auction, or the construction and enforcement of any agreement or any other document relating to the sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## IX.    RESERVATION OF RIGHTS OF THE SELLERS

The Seller further reserves the right as it may reasonably determine to be in the best interest of its estate:

A.    determine which Bidder(s) is a Qualified Bidder(s);

B.    determine which Bid(s) is a Qualified Bid(s);

C.    determine which Qualified Bid is the highest or best Bid

D.    reject any Bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (3) contrary to the best interests of the Seller and its estate;

E.    impose additional terms and conditions with respect to all potential Bidders;

F.    extend the deadlines set forth herein; and

G.    modify the Bidding Procedures and implement additional procedural rules that the Seller determines, in its business judgment, will better promote the goals of the bidding process and discharge the Seller's fiduciary duties.

**Error! Unknown document property name.**
CLIENTS\24079\1\21424796.v2-5/6/25

**Exhibit B**

**Purchase Agreement**

**ASSET PURCHASE AGREEMENT**

**by and among**

**_____,**

**a _____ corporation,**

**as Purchaser,**

**SYSOREX GOVERNMENT SERVICES, INC.,**
**a Virginia corporation,**

**_____, 2025**

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "**Agreement**") is made and entered into on May ___, 2025, between _____, a _____ corporation (the "**Purchaser**"), and SYSOREX GOVERNMENT SERVICES, INC., a Virginia corporation (the "**Seller**") regarding the Acquired Assets (as that term is defined below). Purchaser and Seller are sometimes to referred to as the "**Parties**" and each a "**Party**".

## RECITALS

A.    The Seller is engaged in the business of the sale of products and services to various governmental agencies (the "**Business**").

B.    On May 5, 2025 (the "**Petition Date**"), the Seller shall file a voluntary bankruptcy petition pursuant to Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and thereafter continue in the possession of its assets and in the management of its business pursuant to Sections 1107 and 1108 of the Bankruptcy Code (the "**Bankruptcy Filing**").

C.    On May 5, 2025, the Seller filed the Debtor's Motion For Entry Of Orders (I) (A) Approving Bidding Procedures For The Sale Of The Debtor's Business, (B) Approving The Form Of Purchase Agreement; (C) Approving The Form And Manner Of Service Of Auction Notice; And (D) Scheduling An Auction; (II) Approving Sale Of The Business Free And Clear Of Liens, Claims, Encumbrances And Other Interests, And (III) Granting Related Relief [Dkt. No. ___] (the "**Sale Motion**").

D.    On May ___, 2025, the Bankruptcy Court entered Order (I) (A) Approving Bidding Procedures For The Sale Of The Debtor's Business; (B) Approving The Form Of Purchase Agreement; (C) Approving The Form And Manner Of Service Of Auction Notice; And (D) Scheduling An Auction; And (II) Granting Related Relief [Dkt. No. ___] (the "**Bidding Procedures Order**").

E.    On _____, 2025, the Seller conducted an auction for the sale of the assets of the Business (the "**Auction**"). At the conclusion of the Auction, the Purchaser was declared to be the bidder with the highest and best bid and was declared the Successful Bidder, as defined in the Sale Motion.

F.    The Purchaser desires to purchase from the Seller, and the Seller desire to sell to the Purchaser, substantially all assets of the Business, other than the exclusions provided for herein, upon the terms and subject to the conditions set forth herein and in accordance with Sections 363 and 365 of the Bankruptcy Code (the "**Sale**").

NOW, THEREFORE, in consideration of the representations, warranties, covenants and agreements contained in this Agreement and other good and valuable consideration, sufficiency of which is hereby acknowledged, the parties, intending to be legally bound, agree as follows:

2

# SECTION 1
# PURCHASE OF ASSETS

**1.1** **Acquired Assets**.  Subject to the terms and conditions hereof, at the Closing, the Seller shall sell, assign, transfer, convey, and deliver to the Purchaser, and the Purchaser shall purchase and accept, all of the Seller's right, title and interest in and to substantially all of the Seller's Business and assets, including but not limited to accounts receivable, inventory, personal property, contracts, contracts itemized on Schedule 4.2(a) annexed hereto, insurance policies, leases, general intangibles, intellectual property, and other fixed assets (collectively, the "**Acquired Assets**").  The Acquired Assets will not include those items of personal property, contracts, and/or leases set forth on Schedule A hereto (the "**Excluded Assets**"). At any time up to and through forty-five (45) business days after the Closing Date, Purchaser, in its sole discretion by written notice to Seller, may add additional executory contracts or unexpired leases to the Excluded Assets, and such executory contracts or unexpired leases shall not constitute Acquired Assets and Purchaser shall not acquire any rights or assume any liabilities with respect thereto. Certain of the Acquired Assets shall be assumed by Seller and assigned to Purchaser, pursuant to Bankruptcy Code §365, and the balance of the Acquired Assets shall be conveyed by a Bill of Sale and/or Assignment in a form reasonably acceptable to Purchaser and Seller.

Notwithstanding anything contained in this Agreement to the contrary, Buyer acknowledges that (a) Buyer has had the opportunity to conduct due diligence prior to execution of this Agreement, (b) Buyer is relying solely upon Buyer's own independent review and investigation and not upon any written or oral representation of Seller, (c) Seller is not making any representations or warranties whatsoever, whether express or implied or written or oral, beyond those expressly given by it to Buyer in Section 4 (as modified by the Schedules), and (d) Buyer agrees that, except for the representations and warranties contained therein, the Acquired Assets are being transferred to Buyer on a "**WHERE IS**" and, "**AS IS**" basis.

**1.2** **[Reserved]**

**1.3** **Sale Free and Clear of Liens**. The Acquired Assets shall be transferred by the Seller, free and clear of all liens, claims and encumbrances (the "**Liens**"), pursuant to Bankruptcy Code §363(f).

**1.4** **Assumption of Liabilities**. Notwithstanding anything to the contrary in this Agreement, other than the liabilities of Seller specifically set forth on Schedule B hereto, Purchaser shall not assume any liabilities of the Seller or its estate, nor shall Purchaser be deemed to be a successor to the Seller or its bankruptcy estate for any purpose whatsoever.

**1.5** **Third Party Consents**. At the request of the Purchaser and only to extent required by Section 363(e)(2) of the Bankruptcy Code, the Seller shall obtain consents of any Person not a party to this Agreement which are required to transfer or assign any interest of the Seller in the Acquired Assets to the Purchaser, vest title in the Acquired Assets in the Purchaser, or permit the Purchaser to operate the Business without a default under, or breach, termination or acceleration of any Seller contract ("**Third Party Consents**") and shall provide the Purchaser with such information with respect thereto as the Purchaser may reasonably request.

3

## SECTION 2
## PURCHASE PRICE

**2.1**    **Purchase Price**.

(a)    The purchase price ("**Purchase Price**") is $_____ to be paid at Closing through a cash payment of $_____ by Purchaser to the Seller and release to Seller of the 10% deposit (the "**Deposit**") made pursuant to the Bidding Procedures Order to the Seller.

**2.2**    **Transfer Taxes**. Pursuant to Section 1146(a) of the Bankruptcy Code, and subject to entry of an Order Confirming a Chapter 11 Plan in the Debtor's case (a "**Confirmation Order**"), any transfers of an interest in property pursuant to the Agreement shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, or governmental assessment in the United States (including any state, municipality, or county), and based upon the entry of a Confirmation Order**,** the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation of any documents without the payment of any such tax, recordation fee, or governmental assessment.  For the avoidance of doubt, the foregoing exemption includes sales and use taxes or any similar government assessment.

## SECTION 3
## CLOSING

**3.1**    **Closing**.  The closing (the "**Closing**") shall take place on the (i) third (3rd) business day following the satisfaction (or waiver by the Party that is entitled to the benefit thereof) of the conditions to Closing set forth in <u>Section 9</u> (*Conditions Precedent*), or (ii) on such other date as shall be agreed among the Parties (the "**Closing Date**") and shall be effective at 11:59 PM on the Closing Date.

**3.2**    **Seller Closing Deliveries**.  The Seller shall deliver to the Purchaser the following documents on the Closing Date:

(a)    a bill of sale, assignment and general conveyance, in form and substance reasonably satisfactory to the Purchaser and Seller, dated as of the Closing Date, with respect to the Acquired Assets;

(b)    all other documents reasonably requested by the Purchaser to be delivered by the Seller in connection with the consummation of the transactions contemplated by this Agreement;

(c)    the Third Party Consents described in Section 1.5 hereof, if any; and

(d)    entry of an unstayed order of the Bankruptcy Court granting the Sale Motion and approving the Sale (the "**Sale Order**").

CLIENTS\24079\1\21425736.v5-5/5/25

**3.3    Purchaser Closing Deliveries**. The Purchaser shall deliver the following to the Seller on the Closing Date:

(a)    the amount of the Purchase Price minus the Deposit, by wire transfer of immediately available funds to an account or accounts designated by the Seller; and

(b)    all other documents reasonably requested by the Seller to be delivered by the Purchaser in connection with the consummation of the transactions contemplated by this Agreement.

## SECTION 4
## REPRESENTATIONS AND WARRANTIES OF THE SELLER

The Seller hereby represents and warrants to the Purchaser as of the date hereof and as of the Closing Date as follows. The Seller acknowledges that the Purchaser is relying on the following representations and warranties in entering into this Agreement.

**4.1    Authorization for Agreement and Consents**.   The Seller has all requisite corporate power and authority, as applicable, to enter into this Agreement and to sell, request assignment of contracts, transfer and convey the Acquired Assets to the Purchaser under this Agreement.  The execution, delivery and performance of this Agreement by the Seller is subject to Bankruptcy Court approval and entry of the Sale Order.  Subject to approval of the Bankruptcy Court, this Agreement and any documents or instruments to be executed and delivered by Seller pursuant hereto constitute and will constitute, legal, valid and binding obligations of the Seller, as applicable, enforceable in accordance with their terms.

## SECTION 5
## REPRESENTATIONS AND WARRANTIES OF THE PURCHASER

The Purchaser hereby represents and warrants to the Seller as of the date hereof and as of the Closing Date as follows. The Purchaser hereby acknowledges that the Seller is relying on the following representations and warranties in entering into this Agreement.

**5.1    Authorization for Agreement and Consents**.   The Purchaser has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder.  The execution, delivery and performance of this Agreement by the Purchaser and the consummation of the transactions contemplated hereby have been duly authorized by all necessary actions of the Purchaser under applicable law.  This Agreement and any documents or instruments to be executed and delivered by the Purchaser pursuant hereto constitute and will constitute, legal, valid and binding obligations of the Purchaser enforceable in accordance with their terms.

## SECTION 6
## SELLER'S REQUIREMENTS PENDING CLOSING

**6.1    Conduct of the Business Pending Closing**. From the date of the Agreement until the Closing, the Seller shall operate the Business in a manner consistent with the Seller's operations

CLIENTS\24079\1\21425736.v5-5/5/25

during the preceding three (3) month period, other than with respect to the Seller's Bankruptcy Filing recognizing that the Seller is in severe financial distress and that such operations are not consistent with the Seller's ordinary course historical operations. The Seller shall provide reports, as reasonably requested, to the Purchaser of all of the Business's financial and sales data in a form mutually agreed by Purchaser and Seller. From the date of the Agreement until the Closing, the Purchaser shall have the right to enter and inspect any premises from which the Business operates during normal business hours and upon at least two (2) hours prior notice. Except as otherwise contemplated under this Agreement or as required by applicable law, from the date hereof until the Closing, without the prior consent of the Purchaser, which shall not be unreasonably, withheld, conditioned or delayed the Seller shall:

(a)     not enter into any contract or agreement to assign, modify, terminate or amend any of the Seller's contracts and leases included in the Acquired Assets;

(b)     not sell, lease, license, or otherwise surrender, relinquish, encumber, or dispose of any of the Acquired Assets (other than sales in the ordinary course of business);

(c)     not take any action or omit to take any action that would cause any of the representations and warranties of the Seller to become inaccurate;

(d)     recognizing that the Seller is in severe financial distress, use its commercially reasonable efforts to preserve its relationships with third parties and keep available the services currently provided to and by the Seller;

(e)     not take any action inconsistent with the practices of the Seller during the three (3) month period prior to the date of this Agreement (including with respect to the making of payments to vendors or other payees), other than with respect to credit management;

provided, however, that (i) nothing in this Section 6 shall restrict the Seller from taking actions otherwise specifically permitted or contemplated by this Agreement or otherwise required by the Bankruptcy Court or the pendency of the Bankruptcy Filing; and provided, further, that nothing in this Section 6 shall restrict the Seller from entering into or consummating the sale or assignment of any of the Excluded Assets on terms consistent with documentation filed with the Bankruptcy Court and on notice to Purchaser.

## SECTION 7
## EMPLOYEES

**7.1     Employees; Benefits**. The Debtor will terminate its employees as of the Closing Date. The Purchaser may offer employment to commence as of the Closing Date to substantially all persons currently employed by Seller (the "**Employees**"), on terms either to be negotiated with such employee or with respect to some employees, terms similar to those currently offered by the Seller to such Employees. The Employees who accept and commence employment with the Purchaser are hereinafter collectively referred to as the "**Purchaser Employees**". The provisions of this Section 7.1 are for the sole benefit of the parties to this Agreement and nothing herein, expressed or implied, is intended or shall be construed to confer upon or give to any person

6

(including for the avoidance of doubt any Purchaser Employees), other than the parties hereto and their respective permitted successor and assigns, any legal or equitable or other rights or remedies under any provision of this Agreement.

## SECTION 8
## APPROVAL OF BANKRUPTCY COURT AND COMPETING TRANSACTIONS

**8.1**   **Submission for Bankruptcy Court Approval**.  The Seller will seek approval of the Sale pursuant to the terms of the Bidding Procedures Order. The Sale Order shall be deemed be to reasonably satisfactory to Purchaser if it contains findings and conclusions by the Bankruptcy Court that, among other things, decree, find and conclude that:  (i) this Agreement is approved pursuant to section 363 of the Bankruptcy Code; (ii) the Acquired Assets are being sold to Purchaser free and clear of all liens, claims, interests, and encumbrances of any type whatsoever, including claims otherwise arising under doctrines of successor liability pursuant to section 363(f) of the Bankruptcy Code, (iii) the actions taken by the Purchaser in connection with the sale were undertaken in good faith, as such term is defined in section 363(m) of the Bankruptcy Code, and the Purchaser is a good faith purchaser and is entitled to the full protection of section 363(m) of the Bankruptcy Code; (iv) the Purchaser is not liable for any claims held by any Person against the Seller or for any obligations of the Seller arising under or related to the Acquired Assets except as expressly set forth in this Agreement; and (vii) the Seller has complied with the notice requirements of Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure and any applicable rules of the Bankruptcy Court with respect to the transactions contemplated hereby.

## SECTION 9
## CONDITIONS PRECEDENT

**9.1**   **Conditions Precedent to the Obligations of the Purchaser**.  The obligations of the Purchaser hereunder are subject to the satisfaction on or prior to the Closing of the conditions set forth below (compliance with which or the occurrence of which may be waived in whole or in part in a writing executed by the Purchaser, unless such a waiver is prohibited by law).

(a)   Purchaser, in its sole discretion, shall have satisfactorily completed all of its due diligence regarding the transaction.

(b)   Compliance with Agreement.  The Seller shall have performed and complied in all material respects with all of its obligations under this Agreement which are to be performed or complied with by Seller prior to or on the date of the Closing.

(c)   No Order.  No statute, rule, regulation, executive order, decree, ruling, or preliminary or permanent injunction shall have been enacted, entered, promulgated, or enforced by any governmental authority or arbitrator, including without limitation the Bankruptcy Court, that prohibits, restrains, enjoins, or materially restricts the consummation of the transactions contemplated by this Agreement that has not been withdrawn or terminated; and no claim, action, suit, arbitration, inquiry, adverse proceeding or investigation (each, an "**Action**") shall be pending (other than an Action that has been or would be vitiated by the Sale Order) by or before any governmental authority or arbitrator against the Purchaser or the Seller, seeking to restrain, enjoin

CLIENTS\24079\1\21425736.v5-5/5/25

or materially restrict the transactions contemplated by this Agreement; provided, however, that the provisions of this Section shall not apply if the Purchaser has directly solicited or encouraged any such Action.

(d)    <u>Bankruptcy Court Approval</u>.  The Bankruptcy Court shall have entered the Sale Order as described herein.

(e)    <u>Representations and Warranties True</u>.  The representations and warranties made by the Seller in this Agreement shall be true and correct, in each case as of the Closing Date (other than those representations and warranties that address matters as of a particular date), with the same effect as though such representations and warranties had been made or given on and as of such date.

**9.2    <u>Conditions Precedent to the Obligations of the Seller</u>**.  The obligations of the Seller hereunder are subject to the satisfaction on or prior to the Closing of the conditions set forth below (compliance with which or the occurrence of which may be waived in whole or in part in a writing executed by the Seller, unless such a waiver is prohibited by law).

(a)    <u>Representations and Warranties True</u>.  The representations and warranties made by the Purchaser in this Agreement shall be true and correct, in each case as of the Closing Date (other than those representations and warranties that address matters as of a particular date), with the same effect as though such representations and warranties had been made or given on and as of such date.

(b)    <u>Compliance with Agreement</u>.  The Purchaser shall have performed and complied in all material respects with all of their obligations under this Agreement which are to be performed or complied with by Purchaser prior to or on the date of the Closing Date.

(c)    <u>No Order</u>.  No statute, rule, regulation, executive order, decree, ruling, or preliminary or permanent injunction shall have been enacted, entered, promulgated, or enforced by any governmental authority or arbitrator, including without limitation the Bankruptcy Court, that prohibits, restrains, enjoins, or materially restricts the consummation of the transactions contemplated by this Agreement that has not been withdrawn or terminated; and no Action shall be pending (other than an Action that has been or would be vitiated by the Sale Order) by or before any governmental authority or arbitrator against the Purchaser or the Seller, seeking to restrain, enjoin or materially restrict the transactions contemplated by this Agreement.

(d)    <u>Bankruptcy Court Approval</u>.  The Bankruptcy Court shall have entered the Sale Order as described herein, and such Sale Order shall not be subject to any stay.

**SECTION 10**
**TERMINATION**

**10.1    <u>Termination.</u>**  This Agreement may be terminated by written notice delivered prior to the Closing only upon the following circumstances:

(a)    By mutual written consent of the Purchaser and the Seller; or

8

(b)      By the Seller if any of the conditions to the Seller's obligation to close as set forth in Section 9.2 are not satisfied on or before _____ or such other date as may be mutually agreed upon by the parties hereto; or (ii) by the Purchaser if any of the conditions to the Purchaser's obligation to close as set forth in Section 9.1 are not satisfied on or before _____, or such other date as may be mutually agreed upon by the parties hereto; provided, however, that the right to terminate this Agreement pursuant to this paragraph (b) shall not be available to any party whose failure to fulfill any obligation under this Agreement shall have been the cause of, or shall have resulted in, the failure of the Closing to occur on or prior to such date.

In the event that this Agreement is terminated pursuant to this Section 10, all further obligations of the parties hereto under this Agreement shall terminate without further liability or obligation of either party to the other party hereunder; *provided, however,* that no party shall be released from liability hereunder for any prior material breach of this Agreement by such party.

(c)      Return of the Deposit will be controlled by the Bidding Procedures Order.

## SECTION 11
## MISCELLANEOUS

**11.1    Expenses**.  Each party will be responsible for the payment of its own costs and expenses (including, without limitation, professional fees of its attorneys, accountants and other advisors) in connection with the transactions contemplated herein. Furthermore, the Purchaser represents and warrants that there are no brokerage or finder's fees that have been incurred in connection with this transaction and shall indemnify the Seller to the extent that it has incurred any liability for brokerage or finder's fees of the Purchaser.

**11.2    Good Faith**.  The Seller and the Purchaser shall cooperate in all reasonable respects and in good faith in seeking (i) entry by the Bankruptcy Court of the Sale Order and (ii) the consummation of the transactions contemplated hereby.

**11.3    Waiver.** Any waiver by a party hereto of any breach of or failure to comply with any provision or condition of this Agreement by any other party hereto shall not be construed as, or constitute, a continuing waiver of such provision or condition, or a waiver of any other breach of, or failure to comply with, any other provision or condition of this Agreement, any such waiver to be limited to the specific matter and instance for which it is given.  No waiver of any such breach or failure or of any provision or condition of this Agreement shall be effective unless in a written instrument signed by the party granting the waiver and delivered to the other party hereto in the manner provided for hereunder in Section 11.7.

**11.4    Governing Law**.  Except with respect to any matter hereunder pursuant to which the Bankruptcy Code is required to be the governing law, this Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements made and to be performed in that state, without regard to any of its principles of conflicts of laws or other laws which would result in the application of the laws of another jurisdiction. This Agreement shall be construed and interpreted without regard to any presumption against the party causing this Agreement to be drafted.

CLIENTS\24079\1\21425736.v5-5/5/25

**11.5** __Jurisdiction and Jury Waiver__.  The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or any other agreement entered into by the Parties in connection herewith, or the breach hereof or thereof, and each of the Parties hereby consents to the personal jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding and waives any right to trial by jury and any objection, including, but not limited to, any objection to the laying of venue or on the grounds of *forum non conveniens*, which any of them may now or hereafter have to the bringing of such action or proceeding in such jurisdiction.  Each Party hereby irrevocably consents to the service of process of any of the aforesaid courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the other parties to such action or proceeding.

**11.6** __Amendment and Modification__.  No amendment, modification, waiver, replacement, termination, or cancellation of any provision of this Agreement will be valid, unless the same will be in writing and signed by the Purchaser and the Seller party hereto.

**11.7** __Notices__. All notices, requests, demands and other communications hereunder shall be made in writing.  Notices, requests, demands and other communications shall be deemed to be duly given upon the date of delivery, if delivered by hand; upon the second business day after mailing, if mailed by certified or registered mail with postage prepaid; or upon the first day after dispatch, if sent by nationally-recognized overnight courier as follows:

If to the Seller:
>Sysorex Government Services, Inc.
>13880 Dulles Corner Lane, Suite 120
>Herndon, VA  20171

With a copy to:

>Cullen and Dykman LLP
>333 Earle Ovington Blvd.
>Uniondale, NY  11553
>Attn: Ralph Preite, Esq.

>and

>Cullen and Dykman LLP
>One Battery Park Plaza.
>New York, NY  10004
>Attn: Michelle McMahon, Esq.

If to the Purchaser:

With a copy to:

10

or to such other addresses as any party may provide to the other parties in writing.

**11.8    Entire Agreement**.    This Agreement, together with its schedules and the certificates, agreements, documents, instruments and writings that are delivered pursuant hereto, constitutes the entire agreement and understanding of the Purchaser and the Seller with respect to the subject matter hereof and supersedes all prior understandings, agreements, or representations by or among the Purchaser and the Seller, written or oral, to the extent they relate in any way to the subject matter hereof or the transactions contemplated hereby.

**11.9    Successors**.    This Agreement shall be binding upon and shall inure to the benefit of each of the parties hereto and to their respective successors and permitted assigns.

**11.10    Counterparts and Electronic Signatures**.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument.    Signatures in Portable Document Format or other similar electronic format shall constitute original signatures for the purposes of this Agreement.

**11.11    Severability**.    The provisions of this Agreement will be deemed severable and the invalidity or unenforceability of any provision of this Agreement will not affect the validity or enforceability of the other provisions hereof.

**11.12    Drafting Presumption**.    The parties have participated jointly in the negotiation and drafting of this Agreement.    In the event an ambiguity or a question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the parties, and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provisions of this Agreement.

**11.13    Headings**.    The headings used in this Agreement are for convenience only and shall not constitute a part of this Agreement.

**11.14    Schedules**.    All of the Schedules attached hereto are incorporated herein and made a part of this Agreement by reference.

**11.15    Third Party Beneficiaries**.    This Agreement is solely for the benefit of the parties hereto and their respective successors and permitted assigns, and this Agreement shall not be deemed to confer upon or give to any other third party any remedy, claim of liability or reimbursement, cause of action, or other right.

*[Signatures on the following page]*

CLIENTS\24079\1\21425736.v5-5/5/25

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day and year first above written.

**PURCHASER:**

    _____

By:_____
Name:
Title:

**SELLER:**

**SYSOREX GOVERNMENT SERVICES, INC.**

By:_____
Name:  Zaman Khan
Title:    President

## SCHEDULE A
## EXCLUDED ASSETS

Excluded Assets shall include:

Trade name "Sysorex" which Seller does not own but is licensed to use.

Website: https://sysorexinc.com/  This domain is not the sellers or parent's property.  It is used by license.

Email messages to inboxes hosted by this domain sysorexinc.com will need to be forwarded for period of time with domain-owner's consent.

13

**SCHEDULE B**
**ASSUMED LIABILITIES**

Purchaser shall assume the following liabilities of Seller subject to the terms hereof:

- Trade payables for existing trade vendors
- Employee salaries and benefits

14

**SCHEDULE 2.1(A)(III)**
**2024 REVENUE AND PROFIT FORECAST**

See attached.

($ in 000s)

**Sysorex Government Services, Inc.**
Actual / Forecast

| Weekly Cash Flow Forecast | | Forecast 1 5/5 | Forecast 2 5/12 | Forecast 3 5/19 | Forecast 4 5/26 | Forecast 5 6/2 | Forecast 6 6/9 | Forecast 7 6/16 | Forecast 8 6/23 | Forecast 9 6/24 | Forecast 10 7/1 | Forecast 11 7/8 | Forecast 12 7/15 | Forecast 13 7/22 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | | | | | | | |
| Product revenues | | 10,000 | 77,933 | 45,814 | 42,622 | 115,625 | 38,230 | 2,013,590 | 317,229 | 71,110 | 58,896 | 611,657 | 23,000 | 45,000 | 3,470,707 |
| Service revenues | | 82,000 | | | | 82,000 | | | | 82,000 | | | 82,000 | | 328,000 |
| **Total Receipts** | | 92,000 | 77,933 | 45,814 | 42,622 | 197,625 | 38,230 | 2,013,590 | 317,229 | 153,110 | 58,896 | 611,657 | 105,000 | 45,000 | 3,798,707 |
| **Disbursements** | | | | | | | | | | | | | | | |
| Supplier Payments | | 80,960 | 68,581 | 40,317 | 37,508 | 173,910 | 33,642 | 1,413,070 | 238,845 | 134,737 | 51,828 | 530,530 | 92,400 | 39,600 | 2,935,928 |
| Wages | | - | 70,527 | - | 70,527 | - | 70,527 | - | 70,527 | - | 70,527 | - | 70,527 | - | 423,162 |
| Health care costs (Anthem BC/BS, Delta Dental, Visio and life insurance) | | 24,019 | - | - | - | 5,473 | - | 24,019 | - | - | 24,019 | - | - | - | 72,057 |
| Commissions | | | | | | | | 3,931 | | | | | 63,168 | | 72,572 |
| **Total Operating Disbursements** | | 104,979 | 139,108 | 40,317 | 113,508 | 173,910 | 128,188 | 1,413,070 | 313,303 | 134,737 | 146,374 | 530,530 | 226,095 | 39,600 | 3,503,719 |
| **Operating Cash Flow** | | (12,979) | (61,175) | 5,498 | (70,885) | 23,715 | (89,958) | 600,520 | 3,926 | 18,373 | (87,478) | 81,127 | (121,095) | 5,400 | 294,988 |
| **Non Operating Disbursements** | | | | | | | | | | | | | | | |
| Rent | | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Corp. Ins (D&O, prop, wcomp,  gen'l liab) | | 8,386 | - | - | - | 8,386 | - | - | - | 8,386 | - | - | - | - | 25,158 |
| Internet , Bento , AWS, AT&T | | 2,233 | - | - | 912 | - | 2,233 | - | 912 | - | 2,233 | - | - | 912 | 9,435 |
| Fed Ex fees | | - | - | 200 | - | - | - | 300 | - | - | - | - | 300 | - | 800 |
| Bank fee including credit charges | | - | 160 | - | - | 1,200 | 160 | - | - | - | 1,200 | 160 | - | - | 2,880 |
| Cox | | - | 325 | - | - | - | 325 | - | - | - | 325 | - | - | - | 975 |
| | Total Significant Vendors | | | | | | | | | | | | | | |
| Tek 84 | Aged critical vendor liabilities | 778,000 | - | 147,545 | - | - | 147,545 | - | - | | | | | | 295,090 |
| Carahsoft | Aged critical vendor liabilities | - | 5,612 | - | - | - | - | - | - | | | | | | 5,612 |
| Tidalwave | Aged critical vendor liabilities | 484,000 | 80,000 | - | 78,000 | - | - | - | - | | | | | | 158,000 |
| Trtace-Tech | Aged critical vendor liabilities | - | 4,950 | - | - | - | - | - | - | | | | | | 4,950 |
| TD/Synnex | Prepay for Credit Card Orders | - | 29,547 | - | - | - | - | - | - | | | | | | 29,547 |
| Tailon D&O insurance | | - | - | - | - | - | - | - | - | | | | | | - |
| Professional/Legal fees | Cullen and Dykman LLP* | - | - | - | - | - | - | - | - | | | | | | - |
| **Net Cash Flow** | | (143,707) | (209,205) | (72,702) | (90,835) | (133,416) | (92,676) | 600,220 | 3,014 | 9,987 | (91,236) | 80,967 | (121,395) | 4,488 | (256,497) |
| **Opening Book Cash 04/25/2024** | | 485 | (143,222) | (352,427) | (425,129) | (515,965) | (649,381) | (742,057) | (141,837) | (138,823) | (128,836) | (220,072) | (139,105) | (260,500) | |
| Net Cash Flow | | (143,707) | (209,205) | (72,702) | (90,835) | (133,416) | (92,676) | 600,220 | 3,014 | 9,987 | (91,236) | 80,967 | (121,395) | 4,488 | (256,497) |
| | | 0 | 0 | | | | | | | | | | | 0 | |
| **Ending Book Cash** | | - | (143,222) | (352,427) | (425,129) | (515,965) | (649,381) | (742,057) | (141,837) | (138,823) | (128,836) | (220,072) | (139,105) | (260,500) | (256,012) | (138,823) |

*No legal fees are anticipated to be allowed and payable on an interim basis. The budget will be updated to refelct anticiapted legal fees before entry of a Final Order.

CLIENTS/24079/1/21437180.v2-5/5/25

**SCHEDULE 4.5**
**REAL ESTATE**

None.

CLIENTS\24079\1\21425736.v5-5/5/25

**Exhibit C**

**Auction and Sale Notice**

CLIENTS\24079\1\21404247.v2-5/6/25

**CULLEN AND DYKMAN LLP**
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Fl.
Uniondale, NY 11553
(516) 357-3700
Email: rpreite@cullenllp.com

Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Fl.
New York, New York 10004
(212) 510-2296
Email: mmcmahon@cullenllp.com
         kchristodoulou@cullenllp.com

*Proposed Attorneys to Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SYSOREX GOVERNMENT SERVICES, INC. | Case No. 25-10920 (JPM) |
| Debtor. | |

## <u>AMENDED NOTICE OF AUCTION AND PROPOSED SALE OF BUSINESS</u>

**PLEASE TAKE NOTICE THAT***:*

1.       On May 5, 2025, Sysorex Government Services, Inc. (the "**Debtor**"), debtor and

debtor-in-possession in the above-captioned chapter 11 case (the "**Chapter 11 Case**") filed a

motion (the "**Motion**") seeking entry of an order (the "**Bidding Procedures Order**") pursuant to

sections 105, 363, 365 and 503 of chapter 11 of title 11 of the United States Code (the

"**Bankruptcy Code**") and Rules 2002, 6004, 9006, and 9007 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"): (a) approving bidding procedures ("**Bidding**

**Procedures**"), substantially in the form annexed to the Bidding Procedures Order as Exhibit 1,

related to the sale and proposed auction of the Debtor's business (the "**Business**") pursuant to

sections 363(b), (d) (f), and (m) of the Bankruptcy Code; (b) approving the form of proposed

asset purchase agreement (the "**Purchase Agreement**"), a copy of which is annexed to the

Motion as Exhibit B, solely to the extent of its use as a form which all bidders for the Business

must follow; (c) scheduling an auction (the "**Auction**") and a hearing (the "**Sale Hearing**") to

approve the sale of the Business; and (d) approving the form and manner of notice (the "**Auction

Notice**") of the Auction and Sale Hearing substantially in the form annexed to the Motion as

Exhibit C. On _____, 2025, the Bankruptcy Court entered the Bidding Procedures Order

(Dkt. No. ____).

2.      A copy of the Motion, the Bidding Procedures, the Bidding Procedures Order may

be obtained by: (i) accessing the Bankruptcy Court's website at www.nysb.uscourts.gov

(password required); (ii) going in person to the Office of the Clerk of the Bankruptcy Court at

the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New

York, New York 10004 or (iii) contacting Kyri Christodoulou, Esq. of Cullen and Dykman LLP,

proposed counsel to the Debtor, at kchristodoulou@cullenllp.com.

3.      As set forth in the Bidding Procedures, the sale of the Business will be sold to the

highest or best offer, subject to Bankruptcy Court approval.

4.      All interested parties are invited to make offers for the Business in accordance

with the terms of the Bidding Procedures and Bidding Procedures Order.  The deadline to submit

bids (the "**Bid Deadline**") is June 17, 2025 at 5:00 p.m. (EST).  Pursuant to the Bidding

Procedures Order, if multiple Qualified Bids with respect to the Business are submitted by the

Bid Deadline, the Debtor shall conduct an Auction to determine the highest and otherwise best

Qualified Bid with respect to the Business.  The Auction will take place at the offices of Cullen

and Dykman LLP, One Battery Park Plaza, 34th Fl., New York, New York 10004, June 23,

2025, starting at 10:00 a.m. (EST), or at such other later date and time or other place, as may be

determined by the Debtor at or prior to the Auction.

5.     The Bidding Procedures Order further provides that a Sale Hearing will be held

on _____, 2025 at __:00 a/p.m. EST before the Honorable John P. Mastando III, United

States Bankruptcy Judge, at the United States Bankruptcy Court, Southern District of New York,

One Bowling Green, New York, New York 10004 (the "**Bankruptcy Court**"), which hearing

may be adjourned from time to time, including, without limitation, by announcing such

adjournment on the record at the Sale Hearing.

6.     At the Sale Hearing, the Debtor will request that the Bankruptcy Court enter an

order, among other things, approving the sale of the Business to the Successful Bidder who

submitted the highest and best bid for the Business.  In addition, the Debtor requests that the

Bankruptcy Court provide that the transfer of the Business be free and clear of any pledges, liens,

security interests, encumbrances, claims, charges, options and interests thereon.

7.     At the Sale Hearing, the Bankruptcy Court may enter such orders as it deems

appropriate under applicable law and as required by the circumstances and equities of this

Chapter 11 Case. Objections, if any, to the Motion must be made in writing, must state with

particularity the reasons for the objection or response, and must be filed with the Clerk of the

Bankruptcy Court, with copies delivered to the Bankruptcy Court and received by the Chambers

of the Honorable John P. Mastando III, United States Bankruptcy Judge, at the United States

Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York

10004, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court,

must set forth the name of the objecting party, the nature and basis of the objection and the

specific grounds therefore and must be served upon: (a) the United States Trustee for the

Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014; (b)

proposed counsel to the Debtor, Cullen and Dykman LLP, One Battery Park Plaza, 34th Fl., New

York, New York 10004, Attn: Ralph Preite, Esq., Michelle McMahon, Esq., and Kyri

Christodoulou, Esq.; (c) counsel to the Debtor's lenders; and (d) counsel to any the Committee

appointed, so as to be received no later than 4:00 pm (EST) seven (7) days prior to the Sale

Hearing (the "**Sale Objection Deadline**"), provided any party that files a timely objection may

supplement such objection not later than 5:00 p.m. (EST) one (1) day prior to the Sale Hearing to

address matters determined at the Auction, if any.

8.      Requests for information concerning the sale of the Business should be directed

by written (including e-mail) or telephonic request to: (i) Jameson Capital, LLC, Attn: Timothy

Orr, 1522 East Sweet Citrus Dr., Queen Creek, AZ 85140, timorr@protonmail.com; and (ii)

Cullen and Dykman LLP, One Battery Park Plaza, 34th Fl., New York, New York 10004, Attn:

Kyri Christodoulou, Esq., kchristodoulou@cullenllp.com (Tel: 516-357-3700).


Dated: May 6, 2025                    By: /s/   *Kyriaki Christodoulou*_____
                                      Ralph Preite, Esq.
                                      The Omni Building
                                      333 Earle Ovington Blvd, 2nd Floor
                                      Uniondale, NY 11553
                                      (516) 357-3700
                                      Email: rpreite@cullenllp.com

                                      Michelle McMahon, Esq.
                                      Kyriaki Christodoulou, Esq.
                                      One Battery Park Plaza, 34th Fl.
                                      New York, New York 10004
                                      (212) 510-2296
                                      Email:  mmcmahon@cullenllp.com
                                              kchristodoulou@cullenllp.com

                                      *Proposed Attorneys to Sysorex Government Services, Inc.*

**Exhibit D**

**Sale Order**

**CULLEN AND DYKMAN LLP**
Ralph Preite, Esq.
The Omni Building
333 Earle Ovington Blvd, 2nd Fl.
Uniondale, NY 11553
(516) 357-3700
Email: rpreite@cullenllp.com

Michelle McMahon, Esq.
Kyriaki Christodoulou, Esq.
One Battery Park Plaza, 34th Fl.
New York, New York 10004
(212) 510-2296
Email: mmcmahon@cullenllp.com
        kchristodoulou@cullenllp.com

*Proposed Attorneys to Debtor and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SYSOREX GOVERNMENT SERVICES, INC.<br><br>Debtor. | Chapter 11<br><br>Case No. 25-10920 (JPM) |

**AMENDED PROPOSED ORDER (I) APPROVING SALE OF THE DEBTOR'S BUSINESS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") filed by Sysorex Government Services, Inc., the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its attorneys, Cullen and Dykman LLP, seeking entry of an order (this "**Sale Order**"), among other orders, pursuant to sections 105, 363, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), and Rules 2002, 6004, 9006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), inter alia, approving and authorizing the sale (the "**Sale**") of the Debtor's business (the "**Business**") to the Successful Bidder (as defined

1

below), free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options, and interests thereon, pursuant to the Purchase Agreement (as defined below); and this Court having reviewed the Motion and the Purchase Agreement and upon this Court's prior order approving certain bidding procedures (the "**Bidding Procedures Order**") and scheduling a hearing (the "**Sale Hearing**") on the Motion; and a Sale Hearing having been held on

_____, 2025; and due and sufficient notice of the Sale Hearing and the relief sought therein having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties in interest; and upon the entire record of the hearings held in this chapter 11 case, including, without limitation, all proffers and other evidence admitted at the Sale Hearing, and after due deliberation thereon and good cause appearing therefor, it is hereby:

**FOUND, CONCLUDED, AND DETERMINED THAT:**

1.     **Jurisdiction and Venue.**  This Court has jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     **Notice.** Due, sufficient, and adequate notice of the Motion and the relief requested therein, the Sale Hearing, and the sale, as set forth in the Bidding Procedures Order and the Purchase Agreement (the "**Sale**"), has been given in accordance with section 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 9006, and 9007 and in compliance with the Bidding Procedures Order.  Such notice was good and sufficient in light of the circumstances and the nature of the relief requested, and no other or further notice thereof is required.

3.      **Opportunity to Object.**  A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

4.      **Sale is Appropriate.**  The sale of the Business pursuant to the Purchase Agreement is authorized pursuant to section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(f).  The Sale of the Business outside the ordinary course of business represents the sound business judgment of the Debtor and is appropriate in light of the facts and circumstances surrounding the Sale and this chapter 11 case.

5.      **Corporate Authority.**  The Debtor has full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby, and to consummate the transactions contemplated therewith, and given entry of this Order no consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtor to consummate the Sale.

6.      **Best Interests/Business Justification.**  The Debtor has articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, and approval of the Purchase Agreement and the consummation of the Sale is in the best interests of the Debtor, its estate, creditors, and other parties in interest. The Debtor has marketed the Business and conducted the sale process in compliance with the Bidding Procedures Order. The Bidding Procedures provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Business.  The terms and conditions of the Purchase Agreement are fair and reasonable. The Purchase Agreement represents the highest and best offer for the Business, and the purchase price set forth therein is fair and reasonable and constitutes fair consideration and reasonably equivalent value under the Bankruptcy Code and applicable law.

3

7.      **Highest or Otherwise Best Bid.** The Successful Bidder is the successful bidder for the purchase of the Business, as set forth in the Purchase Agreement between the Debtor and the Successful Bidder. The bid of the Successful Bidder is (i) fair and reasonable and (ii) the highest or otherwise best offer received for the Business at the Auction conducted pursuant to the Bidding Procedures Order.

8.      **Arm's Length Transaction.**  The Purchase Agreement was negotiated, proposed, and entered into by the Debtor and the Successful Bidder without collusion, in good faith, and from arm's-length bargaining positions.  The Successful Bidder is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither the Debtor nor the Successful Bidder has engaged in any conduct that would cause or permit the Sale or any part of the transactions contemplated by the Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code.

9.      **Good Faith Successful Bidder.**  The Successful Bidder is a good faith Successful Bidder for value and, as such, is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  The Successful Bidder will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in connection with the transactions contemplated by the Purchase Agreement at any time after the entry of this Sale Order.

10.     **Free and Clear.** The Debtor has complied with section 363(f) of the Bankruptcy Code because one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied with regard to each such lien, claim, interest, obligation, right, or encumbrance.  All parties holding liens, claims, interests, obligations, rights, or encumbrances on or with respect to the Business have been provided notice of the proposed Sale and shall be granted an opportunity to object to the relief requested in the Motion, and any such entity that

4

does not object to the Sale shall be deemed to have consented.  Those holders of liens, claims,

interests, obligations, rights, or encumbrances on or with respect to the Business who did object

fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and, to

the extent such liens, claims, interests, obligations, rights, or encumbrances constitute valid and

enforceable liens or other similar interests, are adequately protected by having such liens, claims,

interests, obligations, rights, or encumbrances attach to the proceeds of the Sale ultimately

attributable to the property against or in which they assert a lien or other similar interest.

11.      **Legal and Factual Bases.** The legal and factual bases set forth in the Motion and

at the Sale Hearing establish just cause for the relief granted herein.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED**

**THAT:**

12.      The Motion is GRANTED, to the extent set forth herein.

13.      All objections to entry of this Sale Order or to the relief provided herein and

requested in the Motion that have not been withdrawn, waived, resolved, or settled on the terms

of this Order are hereby denied and overruled in their entirety.

14.      This Sale Order shall constitute findings of fact and conclusions of law and shall

take effect immediately upon execution hereof.

**Approval of Sale**

15.      **Sale Approval.** The Sale, and all of the terms and conditions and transactions

contemplated by the Purchase Agreement, are hereby authorized and approved pursuant to, inter

alia, sections 105(a) and 363(b) of the Bankruptcy Code.  Pursuant to section 363(b) of the

Bankruptcy Code, the Debtor is authorized and directed to consummate the Sale pursuant to and

in accordance with the terms and conditions of the Purchase Agreement.  The Debtor is

5

authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and effectuate the provisions of this Sale Order and the transactions approved hereby.

16.     **Transfer of Acquired Assets.** Except as otherwise provided in the Purchase Agreement or this Order, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, upon the closing of the Sale (the "**Closing**"), all assets of the Debtor as described in the Purchase Agreement (the "**Acquired Assets**") shall be transferred to the Successful Bidder free and clear of all liens, claims, encumbrances, and interests, with all such liens, claims, encumbrances, and interests to attach to the net proceeds of the Sale in the order of their priority, with the same validity, force, and effect which they now have as against the Acquired Assets, subject to any claims and defenses, setoffs, or rights of recoupment the Debtor may possess with respect thereto.  Except as specifically provided in the Purchase Agreement, all persons and entities (and their respective successors and assigns) asserting or holding any claims or interests in or with respect to the Debtor, the Business, the operation of the Debtor's business prior to the Closing, or the transfer of the Business to the Successful Bidder (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), howsoever arising, hereby are forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such claims or interests against the Successful Bidder and/or its affiliates, designees, assignees, successors, properties, or assets.  Except as otherwise provided in the Purchase Agreement, effective upon the Closing, the Successful Bidder shall have no liability for any claims (as defined in section 101(5) of the Bankruptcy Code) against the Debtor or its estate.

6

17.    **Exemption of Transfer Taxes.**  The Sale to the Successful Bidder is exempt from any stamp, transfer or similar taxes pursuant to section 1146(c) of the Bankruptcy Code and any other applicable transfer or similar taxes to the maximum extent permitted by law.

18.    **Successor Liability.** The Successful Bidder is not a successor corporation or successor entity to the Debtor, the Debtor's estate, or the claims or liabilities of either.

19.    **Surrender of Assets.** All entities who are presently, or who as of the Closing may be, in possession of some or all of the Acquired Assets, hereby are directed to surrender possession of the Acquired Assets to the Successful Bidder as of the Closing.

20.    **Good Faith Successful Bidder/No Collusion.** The Successful Bidder is a good faith Successful Bidder within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protection of that provision.  The consideration provided by the Successful Bidder is fair and reasonable, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

21.    **Additional Documents.** Prior to or upon the Closing, each of the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release their interests, if any, in the Acquired Assets as such interests, liens, claims, and/or other encumbrances may have been recorded or may otherwise exist.

22.    **Release and Discharge of Liens.**  Except as otherwise provided in the Purchase Agreement, this Sale Order (a) shall be effective as a determination that, upon the Closing, all liens existing with respect to the Debtor and/or the Acquired Assets prior to the Closing have been unconditionally released, discharged, and terminated as to (i) the Successful Bidder and (ii) the Acquired Assets (provided, nothing herein shall affect the continuation of such liens as to the Debtor and assets of the Debtor other than the Acquired Assets), and that the conveyances

7

described herein have been effected, and (b) shall be binding upon all filing agents, filing

officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of

deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and

local officials, and all other persons and entities who may be required by operation of law, the

duties of their office, or contract, to accept, file, register, or otherwise record or release any

documents or instruments, or who may be required to report or insure any title or state of title in

or to any of the Acquired Assets.

23.    **Financing Statements.**  If any person or entity that has filed financing

statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements

evidencing interests with respect to the Acquired Assets shall not have delivered to the Debtor or

the Successful Bidder prior to the Closing, in proper form for filing and executed by the

appropriate parties, termination statements, instruments of satisfaction, releases of all interests

which the person or entity has with respect to the Acquired Assets, then (a) the Debtor or the

Successful Bidder is hereby authorized to execute and file such statements, instruments, releases,

and other documents on behalf of the person or entity with respect to the Acquired Assets and (b)

the Successful Bidder and/or the Debtor is hereby authorized to file, register, or otherwise record

a certified copy of this Sale Order, which, once filed, registered, or otherwise recorded, shall

constitute conclusive evidence of the release of all interests and liens in, against, or with respect

to the Acquired Assets.  This Sale Order is deemed to be in recordable form sufficient to be

placed in the filing or recording system of each and every federal, state, and local governmental

agency, department, or office.

24.    **Modifications.**  The Purchase Agreement and any related agreements, documents,

or other instruments may be modified, amended, or supplemented by the parties thereto, in a

CLIENTS\24079\1\21406339.v2-5/6/25

writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment, or supplement is not material.

25.     **Automatic Stay.**  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court, to allow the Successful Bidder to (i) give the Debtor any notice provided for in the Purchase Agreement, and (ii) take any and all actions permitted by the Purchase Agreement and ancillary agreements in accordance with the terms and conditions thereof.

26.     **Recording.** Each and every federal, state, and local governmental agency, recording office or department, and all other parties, persons, or entities is hereby directed to accept this Sale Order and any and all documents and instruments necessary and appropriate for recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the Acquired Assets conveyed to the Successful Bidder.

27.     **Non-Bankruptcy Law.** Nothing in this Order or the Purchase Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including but not limited to environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of the Closing. Nothing contained in this Order or in the Purchase Agreement shall in any way diminish the obligation of any entity, including the Debtor, to comply with environmental laws.  Nothing in this Order or the Purchase Agreement authorizes the transfer to the Successful Bidder of any licenses, permits, registrations, or governmental authorizations and approvals without the Successful Bidder's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

9

28.     **Successors, Assigns.**  The terms and provisions of the Purchase Agreement and
this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor,
its estate, creditors, the Successful Bidder, and any of such parties' respective affiliates,
designees, successors, and assigns, and shall be binding in all respects upon all of the Debtor's
creditors, all prospective and actual bidders for the Business, and all persons and entities
receiving notice of the Motion, the Auction, and/or the Sale Hearing notwithstanding any
subsequent appointment of any trustee(s), examiner(s), or receiver(s) under any chapter of the
Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding
on such trustee(s), examiner(s), or receiver(s) and shall not be subject to rejection or avoidance
by the Debtor, its estate, creditors, or any trustee(s), examiner(s), or receiver(s).

29.     **Non-Severability/Failure to Specify.** The provisions of this Sale Order are non-
severable and mutually dependent. The failure specifically to include any particular provision of
the Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such
provision, it being the intent of this Court that the Purchase Agreement be authorized and
approved in its entirety.

30.     **Order Immediately Effective.** Notwithstanding the possible applicability of
Bankruptcy Rules 6004(h), 7052, 9014, or otherwise, the terms and conditions of this Sale Order
shall be immediately effective and enforceable upon its entry.

31.     **Service.** Within three (3) business days of entry of this Order, the Debtor shall
serve a copy of this Order on the parties so designated in the Bidding Procedures Order.

32.     **Sale Order Controls.** In the event of any conflict between this Order and any
plan of reorganization or liquidation for the Debtor, or order confirming the same, this Order
shall control.

33.    **Retention of Jurisdiction.** This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Sale Order and the Purchase Agreement.

Dated: _____, 2025
New York, New York

_____
THE HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

11